James Schwartz, Appellee, v. Civil Service Commission of City of Chicago et al., Appellants.

**Gen. No. 46,187.**

Opinion filed March 8, 1954. Released for publication March 24, 1954.

JOHN J. MORTIMER, Corporation Counsel for City of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, both of Chicago, of counsel.

MICHAEL F. RYAN, of Chicago, for appellee; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

James Schwartz served as a patrolman in the classified service of the Police Department of the City of Chicago for more than 16 years. He was suspended on July 21, 1952. Charges filed by the Commissioner of Police with the Civil Service Commission on August 5, 1952, allege that on July 20, 1952, Schwartz was guilty of conduct unbecoming a member of the police department and that on July 21, 1952, he was under the influence of intoxicating liquors. At the hearing there was no proper evidence of the charges of conduct unbecoming a police officer because the women who had complained failed to appear. The Commission made a find-

ing and decision that on July 20, 1952, the respondent, while in the uniform of a patrolman and on a regular tour of duty, was intoxicated and under the influence of intoxicating liquors and ordered that he be discharged from his position as a patrolman and member of the police department. He filed a complaint to review the decision of the Commission and asked that the record be quashed. As a part of their answer the commissioners filed a record, including a transcript of the proceedings at the hearing. The court found that the decision of the Commission "is not supported by any evidence in the record and is against the manifest weight of the evidence," and ordered that the record be quashed and that the decision be reversed. Defendants appeal.

Dr. Patrick S. Vitullo, Chief Physician and Surgeon of the Chicago Police Department, testified that on July 21, 1952, pursuant to a call, he arrived at the 40th District Police Station at about 7:30 p. m., where he examined plaintiff for sobriety; that plaintiff had a staggering gait and was under the influence of intoxicating liquor; that his co-ordination was bad; that he did not know the day of the week or the people around him; and that the plaintiff admitted to him that he had two drinks of Seagrams Seven. Edwin J. Daly, Police Inspector, testified that about 6:15 p. m. on July 21, 1952, he arrived at that police station, having been called by Dr. Vitullo; that plaintiff was there and that Dr. Vitullo told witness that the plaintiff said that it was Tuesday and when asked again he said it was Wednesday; that witness asked the plaintiff what day it was and he said it was Thursday; and that in fact it was Monday. The evidence shows that plaintiff had reported in uniform for his tour of duty at 3:45 p. m. that day but was excused and told to remain for a show-up at 6:30 p. m. Plaintiff's tour of duty was from 3:30

p. m. to 11:30 p. m. The actions with which plaintiff was charged occurred during his tour of duty.

Plaintiff testified that for eight days prior to July 20, 1952, he had been on the medical roll and that July 20, 1952, was his first day back at work; that he had a cold and was running a temperature; that he had dysentery; and that he eventually went to see Dr. Reynolds of the police department on July 16, 1952, who told him to go back to work if he felt better by the end of the week. He testified as to his actions on the evening of July 20, 1952, in connection with transporting two women from the Edgewater Hospital to the County Hospital and denied all charges of wrongdoing. He testified that he finished his assignment at about 1 o'clock on the morning of July 21, although he was supposed to be off duty at 11:30 p. m. on July 20; that he left the station and went home to bed; that after his wife left for work he went to his mother's house to sleep because there was less noise there; that about 2:00 p. m. he went home and found a note saying that Captain Welling, his superior, wanted to see him immediately; that he put on his uniform and went to the station; that he was weak and dizzy and the cold was coming on; that he had dysentery all day; that on the way to the station he stopped at a tavern and had one drink of Seagrams bourbon; that he told the bartender he had dysentery and that the bartender suggested he take blackberry brandy; that he consumed two one-ounce drinks of blackberry brandy; that he had no breakfast or lunch on that day; and that he "had been unable to eat anything for about a week." He stated that after he left the tavern he went to the station and saw Captain Welling, who said "I will see you at 6 o'clock" and then left in an automobile; that he attended the roll call and was told by the sergeant he was excused from duty but to stay in the station, since there was trouble

525

about two girls and there would be a show-up about 6 o'clock; that he stayed in the station until around 6 o'clock; and that he was examined by Dr. Vitullo, who asked him to walk a straight line, to pick up a quarter from the floor and to write his name and address. Plaintiff denied that he was intoxicated at that time and said he was "awfully sick." He testified that he was going to request that his day be switched on July 21, but that when he saw Captain Welling and was told to stay in the station and heard what was going on, he did not bother.

George Krull testified that he had known plaintiff for 27 years; that during the week of July 13 he heard that plaintiff was ill, went to his home and found him in bed; that although it was a very hot night, plaintiff had a woolen blanket on him and had a chill; that on a second visit to plaintiff the same condition prevailed; and that witness was advised that plaintiff had dysentery. He said that plaintiff's reputation for truth and veracity was excellent and that his reputation for sobriety was very good. John J. Soragarue testified that he had known plaintiff for 25 years; that his reputation for truth and veracity was very good; and that he had always been a sober man. Officer Bloomstrand, who was plaintiff's partner on the night of July 20, 1952, denied any misconduct with the two women. He stated that he was not sick on that night; and that plaintiff was sick. He testified that he asked plaintiff how he was feeling and that plaintiff said he thought he could get through the evening.

██ ██ July 20, 1952 was a Sunday. Plaintiff was charged with being intoxicated on July 21, 1952. The evidence establishes that he was guilty of that charge. The finding and decision of the Commission was that he was intoxicated on July 20, 1952. This was clearly a typographical error. It does not appear that the

error in the day materially affected the rights of the plaintiff. He knew that he was being charged with being intoxicated on July 21, 1952. The testimony was that he was intoxicated on that day and his testimony related to that day. Section 12 (2) (par. 275, ch. 110, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 104.094(12), subd. (2)]) of the Administrative Review Act provides that technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him. The typographical error in finding that he was intoxicated on July 20, 1952, when the evidence shows that he was intoxicated on July 21, 1952, did not and does not affect the rights of plaintiff and did not and does not result in substantial injustice to him.

██ ██ Plaintiff maintains that the Commission erred in improperly admitting hearsay prejudicial testimony against him. This evidence related to the charge that plaintiff was guilty of conduct unbecoming a policeman. Inspector Daly testified as to the statements of the two women who charged the plaintiff with improper conduct. We do not believe the admission of that testimony prejudiced plaintiff. He was not found guilty of that charge.

For the reasons stated the judgment of the superior court of Cook county is reversed and the cause remanded with directions to enter judgment against plaintiff.

*Judgment reversed and cause remanded with directions.*

NIEMEYER, P. J. and FRIEND, J., concur.