Clara Canady, et al., Plaintiffs-Appellants, v. Northern Illinois Gas Company and Illinois Commerce Commission, Defendants-Appellees.

**Gen. No. 11,749.**

Second District, First Division.
September 23, 1963.
Rehearing denied October 16, 1963.

John Alan Appleman, of Urbana, and Ivan Looker, of Watseka, for appellants.

William G. Clark, Attorney General, of Chicago (Edward V. Hanrahan and Thomas G. Lyons, Special Assistant Attorneys General, of counsel), for appellee, Illinois Commerce Commission, and Isham, Lincoln & Beale, of Chicago, and Gray, McIntire & Petersen, of Kankakee (Justin A. Stanley, Robert A. Helman and Donald Gray, of counsel), for appellee, Northern Illinois Gas Company.

McNEAL, PJ.

This appeal involves an action brought under the provisions of the Gas Storage Act (Ill Rev Stats 1961, c 104, §§ 104–112). This Act grants to certain corporations the right to acquire private property by eminent domain for the storage of gas. As a prerequisite, application must be made to the Illinois Commerce Commission for an order approving the project, and the Commission is not to issue such an order unless it finds, among other things, that the project will not injure any water resources. Thereafter, any person directly interested may file a complaint in the circuit court. Further evidence may be offered in the circuit court, but the burden of proof rests upon the plaintiff and the order of the Commission is to be deemed prima facie valid. The circuit court may affirm or set aside the order of the Commission or remand the cause with directions.

In the case at bar, Northern Illinois Gas Company filed an application with the Illinois Commerce Commission for approval of an underground gas storage project near Crescent City in Iroquois County, Illi-

nois. The company proposed to inject natural gas into the St. Peter sandstone, which is a formation between 150 and 200 feet thick and lying about 1200 to 1300 feet below the surface of the ground. The project involves approximately 5300 acres of land, and the company has acquired easements in about 4650 acres out of the total acreage involved. The company requested authority to bring eminent domain proceedings to acquire easements in the remaining 650 acres.

The Illinois Commerce Commission heard the testimony of over twenty witnesses, many of them eminently qualified scientists, including a number of geologists. Also a large number of exhibits of a technical nature were offered into evidence, and the Commission requested and heard testimony from members of the Illinois State Geological Survey. At the conclusion of the hearings, the Commission entered an order approving the project. The order contains detailed findings of fact, including specific findings that the project will have no adverse effects upon water resources.

Thereafter various landowners affected by the order filed their complaint in the circuit court. Portions of the record made before the Commerce Commission were offered into evidence in the circuit court, together with additional evidence. At the conclusion of the hearing, the circuit court entered a judgment affirming the order of the Commission, and this appeal followed.

The principal question involved in this appeal is whether the finding of the Commerce Commission that there will be no adverse effects upon water resources is manifestly against the weight of the evidence. The evidence on this point was highly conflicting.

The Northern Illinois Gas Company introduced evidence to the following effect: The water supply for the area in question is taken from formations above the

St. Peter formation and it is adequate now and for the foreseeable future. Water in the St. Peter formation is not satisfactory either for household use or for irrigation. The Maquoketa shale and immediately adjacent formations, lying above the St. Peter formation, insure the protection of the ground water resources now being used in the area and would prevent the migration to the surface of any gas stored in the St. Peter formation. Only one well has ever been drilled in Iroquois County which went as deep as the St. Peter formation and that well was drilled in 1898 and abandoned in 1926. The cost of drilling into the St. Peter formation exceeds by many times the cost of drilling into the formations now being used. The storage of gas in the St. Peter formation will not adversely affect the withdrawal of water from the formation outside the gas bubble, and there will be no danger to the public from the program.

The evidence offered by the landowners was to the opposite effect. They introduced evidence that the water supplies in the area are becoming depleted; that there is an ever increasing demand for water for irrigation purposes; that there is a useable and unlimited supply of water in the St. Peter formation which will be displaced by the storage of gas; and that gas stored in the St. Peter formation will escape, destroy the wells now in operation in the area and constitute a distinct hazard to the landowners and the public.

It is apparent that the question involved is a serious one and that the opinions of the experts are in complete conflict.

The Gas Storage Act has been before the Supreme Court on two occasions. In Wilcox v. Illinois Commerce Commission, 23 Ill2d 432, 178 NE2d 873, the Supreme Court affirmed the action of the Commerce Commission and the circuit court in approving a gas

storage project. In the course of its opinion, the Supreme Court made the following observations, pages 436 and 437:

> "It is the function of the Commerce Commission to use its expertise in the evaluation of such expert testimony and we cannot say that the Commission has failed in such appraisal.

> "Gas storage fields are no novelties. They exist in more than a dozen states and were 'well known' in 1955 when this court delivered its opinion in Mississippi River Fuel Corp. v. Hoffman, 4 Ill2d 468. Likewise the public benefit of gas storage fields is also well known. Storing gas in the area of the ultimate market during the warm summer months when the supply of gas from the fields of the south and southwest via the pipe lines is plentiful, for use during the winter when peak requirements are needed, enables more of the public to be furnished natural gas than otherwise would be possible. It is also evident that gas storage enables the gas companies to store the gas for more beneficial uses than to be forced to 'dump' the gas in the summer time."

Peoples Gas Light & Coke Co. v. Buckles, 24 Ill2d 520, 182 NE2d 169, involved an eminent domain proceeding. The Supreme Court held that in such proceeding defendants could not collaterally attack the enabling order of the Commerce Commission, and sustained the constitutionality of the Gas Storage Act.

The problem before us is whether the findings of the Commerce Commission and of the circuit court are manifestly contrary to the weight of the evidence. The rules governing such a situation were stated as follows in Board of Education v. County Board of School Trustees, 32 Ill App2d 1, 6, 176 NE2d 633:

"As to the contention that the judgment below is contrary to the manifest weight of the evidence, this question has arisen innumerable times in courts of review and the rule governing consideration of this question has been stated in many different ways. A court of review cannot substitute its judgment for the judgment of the administrative tribunal. The question is not simply whether the court of review agrees or disagrees with the finding below. It has been said that courts should not disturb administrative findings unless such findings are arbitrary, or constitute an abuse of discretion, or are without substantial foundation in the evidence, or are obviously and clearly wrong, or unless an opposite conclusion is clearly evident."

It is not a question of whether we agree or disagree with the findings below, or whether we would have made such findings had we heard the case in the first instance. The sole question is whether as a court of review, we can say that the findings of the Illinois Commerce Commission and of the circuit court are manifestly contrary to the weight of the evidence, i. e. are obviously wrong. While it is true that substantial evidence was introduced to support the position of the landowners, it is also true that equally substantial evidence was introduced to support the contentions of the Northern Illinois Gas Company. Further, the Commerce Commission had the opportunity of observing the witnesses as they testified and is in a better position to judge their credibility and the weight to be given their testimony. The legislature has entrusted the Commerce Commission with the responsibility of approving or disapproving projects such as the one involved in this case and from our study of the record we do not feel justified in interfering with the order

which was entered by the Commission and affirmed by the circuit court.

Accordingly it is our conclusion that the judgment of the circuit court was correct and that its judgment should be and it hereby is affirmed.

Judgment affirmed.

DOVE and SMITH, JJ, concur.