ALUMINUM COIL ANODIZING CORPORATION, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Second District (1st Division)   No. 74-394

Opinion filed July 22, 1976.

Charles F. Marino, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Jeffrey S. Herden, Assistant Attorney General, of counsel), for respondents.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

On November 15, 1971, the Environmental Protection Agency, (hereinafter EPA) filed a complaint, which was twice amended, against the Aluminum Coil Anodizing Corporation (hereinafter ACA) in which it was alleged that ACA was causing air pollution in violation of section 9(a) of the Environmental Protection Act (hereinafter the Act). (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).) The Pollution Control Board (hereinafter the Board) filed an opinion and order which found that ACA was causing air pollution in violation of the Act and imposed a fine of $1500. ACA appeals from this order to this court pursuant to the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) and section 41 of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1041).

In its second amended complaint, the EPA alleged that ACA had, beginning on or about July 1, 1970, and continuing "until at least the filing hereof," caused air pollution within the meaning of section 3(b) of the Act and in violation of section 9(a) of the Act by emitting into the atmosphere sulphuric acid droplets or mist, nitric oxide and noxious odors. At the hearing on the amended complaint, which began in January, 1973, the EPA introduced the testimony of an environmental protection engineer and four citizen witnesses. The engineer testified that on a visit to the ACA plant in the village of Fox River Grove, he noticed a sharp, acid type odor, mild to moderate in strength downwind of the plant and a vapor

plume. On a subsequent visit to the plant he noticed an odor which he described as a "rather strong overpowering acid odor" inside the plant. He also testified that he observed white spots on plants and aluminum door frames in the vicinity, "greyish smears" on automobiles in the ACA parking lot, and an asphalt roof near the plant which was deteriorated on the side facing the ACA plant and in a considerably better condition on the other side. He also testified that technology was available to control the odors. The four citizen witnesses, residents of Fox River Grove, variously testified that the air in the vicinity of the ACA plant smelled like rotten eggs, sulphur and ammonia; that the source of the odor was the ACA plant; and that the odor made breathing difficult, caused headaches, coughing and burning and watering eyes. These witnesses also indicated that the plant was located in the central shopping area of the village near several blocks of stores, businesses and industries and was located in the same building as a doctor's and dentist's office. The ACA plant was also located near single-family residences and apartment buildings. The record also discloses that an ambient air test was taken by the EPA, but the results of that test were not admitted into evidence; stack tests were not taken. ACA produced the testimony of the president of ACA and three of its employees. The employees all testified that they had not smelled any odors in the vicinity of the plant and that their automobiles were not affected by any emissions from the plant. The president of ACA, whose deposition was introduced into evidence as his testimony by stipulation of the parties, testified that he knew of no complaints from any citizens or officials of the village concerning emissions from the plant. He also described the anodizing process and indicated that in 1971 ACA began the process of moving its operation to a new facility in Streamwood, which move was completed in late 1972, at which time the Fox River Grove plant ceased operations.

In its opinion and order, the Board summarized the EPA's second amended complaint, described the anodizing process and reviewed the testimony of the witnesses. The Board found that "* * * air pollution control equipment is necessary in this process," and concluded its opinion as follows:

"We consider that the weight of evidence presented clearly shows that ACA was causing air pollution in violation of Section 9(a) of the Act and that the disappearance of the odor after the final plant shutdown (R.185) can leave no further doubt as to the origin of the pollution. The penalty is reduced from what it would have been because the phaseout of operations was under way during the period of violation.

The question of a cease and desist order is rendered moot by the closing of the plant."

The Board then entered its order imposing a $1500 penalty upon ACA for the violation of section 9(a) of the Act described in the opinion.

ACA raises five issues for review: (1) whether the opinion and order of the Board shows that ACA's emissions contained sufficient quantities and qualities of contaminants so as to constitute air pollution within the meaning of the Act; (2) whether the opinion and order of the Board shows that the Board properly considered all the facts and circumstances bearing upon the reasonableness of the emissions as required by section 33(c) of the Act; (3) whether the Board made findings of fact in violation of a certain Board procedural rule and considered matters outside the time-scope of the second amended complaint; (4) whether the Board acted improperly in deciding the case without oral argument; and (5) whether the Board erroneously assessed a penalty against ACA or, alternatively, whether the penalty was excessive.

We deem it advisable to consider ACA's first two contentions together.

The statutory framework with which we are concerned on this appeal may be summarized in the following manner. Section 9(a) of the Act prohibits the discharge or emission of "any contaminant" into the environment so as to cause "air pollution." "Contaminant" is defined by section 3(d) of the Act as "* * * any solid, liquid, or gaseous matter, any odor, or any form of energy, from whatever source." Section 3(b) of the Act creates two categories of air pollution. Air pollution is therein defined as the presence in the atmosphere of contaminant in such quantities and of such characteristics and duration as to either: (1) be injurious to human, plant, or animal life, to health or to property, or (2) to unreasonably interfere with the enjoyment of life or property. Section 31(c) of the Act governs the burden of proof in hearings before the Board. Without quoting verbatim from that section, it is sufficient to note that in *Incinerator, Inc. v. Pollution Control Board* (1974), 59 Ill. 2d 290, 300, 319 N.E.2d 794, 799, the Supreme Court stated:

"* * * the EPA had the burden of proving all essential elements of the type of air-pollution violation charged, and the Board must then assess the sufficiency of such proof by reference to the section 33(c) criteria, basing thereon its findings and orders."

In *Processing & Books, Inc. v. Pollution Control Board*, 64 Ill. 2d 68, the Supreme Court made clear that the EPA does not have the burden of proving the unreasonableness of the respondent's conduct in terms of the four criteria mentioned in section 33(c) of the Act, which are factors bearing upon the reasonableness of the emissions involved.

In the present case, the EPA's second amended complaint alleged that ACA had operated its plant in such a manner as to "cause, threaten, or allow the discharge, emission, and presence" of certain substances,

including noxious odors, into the environment, "in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, and animal life, and to health, and to property * * * ." It is apparent from this second amended complaint that ACA was charged with causing air pollution of the first type set forth in section 3(b) of the Act. By its terms proof of the essential elements of air pollution of the first type set forth in section 3(b) does not require any showing by the complainant of the unreasonableness of the emissions involved, in contradistinction to air pollution of the second type set forth in section 3(b).

ACA's first argument, that the Board failed to identify the contaminant allegedly emitted from its plant, simply ignores section 3(d) of the Act which defines contaminant, *inter alia*, as "any odor." The opinion and order of the Board which reviews the evidence concerning the existence of odors emanating from the plant and the effects of such odors on certain individuals, was sufficient to show that ACA had caused air pollution as alleged within the meaning of the Act.

ACA also argues that the Board failed to show that it had considered the factors mentioned in section 33(c) of the Act. In *Processing & Books, Inc. v. Pollution Control Board,* the Supreme Court held that Board opinions issued before the Supreme Court's opinion in *Incinerator, Inc. v. Pollution Control Board* need not be as specific in their findings on the section 33(c) criteria as must Board orders issued after that opinion. The court in *Processing & Books, Inc.* held that an examination of the record therein indicated that there was sufficient evidence to support the Board's ruling on each of the section 33(c) factors and also to support the conclusion that the Board had considered them in its order. In this case, the order of the Board was entered on September 12, 1974, more than two months prior to the Supreme Court opinion in *Incinerator, Inc.*, which was filed on November 27, 1974. Thus, as in *Processing & Books, Inc.*, we must examine the record to determine whether sufficient evidence was supplied by the parties to support the Board's ruling on each of the section 33(c) factors and whether the order of the Board demonstrates that it considered these factors. We find, in view of *Processing & Books, Inc.*, that the evidence presented and the order of the Board were sufficient in this regard. Briefly stated, the Board heard and its opinion indicates that it considered evidence relating to the character and degree of interference with the health and life of area residents; evidence relating to the operation of the plant; the presence of residences nearby the plant; and the availability of pollution control devices in the anodizing process.

■■ We therefore find that the evidence was sufficient to support the finding of the Board that ACA had caused air pollution within the meaning of the Act. We further find that the evidence was sufficient to

support the Board's order on each of the section 33(c) criteria and that the Board's order shows, with sufficient specificity, that these factors were considered. We therefore reject ACA's first two contentions.

ACA's third contention is in two parts. First, it argues that the Board's opinion and order show that it erroneously made certain findings of fact without reference to the principal supporting items of evidence as required by Pollution Control Board Procedural Rule 332. The defect in the Board's opinion herein complained of is the statement in the opinion of the Board that "Property damage in varying degrees was also claimed," which was not followed by a reference to the record. As pointed out by the EPA, this defect is the only point in the Board's opinion where there is such an omission.

■■ Section 12(2) of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 275(2)) states that:

> "Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him."

This section is applicable to the present proceeding for review under Supreme Court Rule 335(h)(2) (Ill. Rev. Stat. 1971, ch. 110A, par. 335(h)(2)). Since ACA has failed to allege that the defect in the Board's opinion complained of herein resulted in any unfairness or prejudice to it, we find no reason to reverse on this ground. In addition, it is to be noted that the opinion of the Board does refer in a paragraph subsequent to the one complained of here, to photographs which were taken of damage to a roof and makes reference to an exhibit containing such photographs. In addition, the record contains testimony of the Environmental Protection engineer, which was noted above, concerning damage to door frames and automobiles resulting from the emissions from ACA's plant.

The second portion of ACA's third contention is that the Board erroneously considered, and made findings of fact with regard to matters which occurred subsequent to the filing of the second amended complaint and which were outside the time-scope thereof. This argument concerns the statement in the opinion and order of the Board that "* * * the disappearance of the odor after the final plant shutdown (R.185) can leave no further doubt as to the origin of the pollution." ACA argues that since the second amended complaint limited the time-scope of this matter to its filing date, which was May 19, 1972, the Board acted improperly in considering the final plant shutdown, which occurred in December 1972, over six months after that filing date. It should be noted in this regard, as observed above, that the second amended complaint alleged violations of

the Act beginning July 1970 and continuing "until *at least* the filing" of the second amended complaint.

■■ In support of this allegation, the appellate court opinion in *Mystik Tape, Div. of Borden, Inc. v. Pollution Control Board* (1973), 16 Ill. App. 3d 778, 306 N.E.2d 574, *rev'd on other grounds* (1975), 60 Ill. 2d 330, 328 N.E.2d 5, was cited by ACA. There, the appellate court held that Board references to testimony concerning matters occurring subsequent to the filing of the amended complaint, which alleged violations occurring up to the date of filing, weakened the Board's conclusion and were to be ignored in reviewing the sufficiency of the evidence. It is important to note that the court found these improper references formed an "extremely critical part" of the Board's order in support of its conclusion that Mystik Tape had violated the Act. Here, unlike the situation presented in *Mystik Tape*, there is no possibility for confusion about whether the evidence concerning "activity" outside the time-scope of the second amended complaint has been used to prove violations occurring inside that time-scope. Rather, the evidence that the odors complained of had ceased after ACA had closed its plant was relevant to proof of the identity of the source of the pollution which occurred on the dates encompassed by the complaint. Further, even assuming that the Board's consideration of this evidence was improper, this would not require reversal since there is substantial competent evidence to sustain the decision of the Board. See Ill. Rev. Stat. 1971, ch. 110, par. 275(2); and *Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1974), 20 Ill. App. 3d 301, 311, 314 N.E.2d 350, 358.

■■ ACA's fourth contention is that the Board acted improperly in deciding this case without hearing oral argument, or ruling on its request for oral argument. ACA bases this contention upon section 33(a) of the Act and Pollution Control Board Procedural Rule 331. Without quoting from these provisions, suffice it to say that neither creates a right to submit oral arguments before the Board; rather, it is clear that oral argument before the Board is discretionary with the Board. In *Lloyd A. Fry Roofing Co.*, the petitioner made a similar contention, arguing that it had a right to file a written brief to the Board. The court first observed, as in the case herein, that the petitioner did not contend that it was denied the opportunity to present argument, offer testimony or cross-examine witnesses or that the Board failed to consider this matter in making its order. Since the hearing there was held to conform the "fundamental principles of justice" the court held that the regulation pertaining to the filing of written briefs was a discretionary provision only and that the Board did not abuse its discretion in rendering its order without considering briefs from the parties. (20 Ill. App. 3d 301, 312, 314 N.E.2d 350, 359.) We agree with this analysis, and find that the Board's refusal to

allow ACA to present oral arguments before the Board, or to rule on ACA's request therefor, was not an abuse of discretion.

ACA's final contention is that the imposition of a $1500 penalty was erroneous, or alternatively, excessive. The pertinent portion of the Board's opinion stating the basis for the imposition of the penalty has been quoted above.

ACA's argument on this issue is that it should have been given an opportunity to comply with the Board's order prior to the imposition of a penalty, citing the appellate court decision in *Mystik Tape v. Pollution Control Board*; that there is no evidence in the record that it had received any complaints from anyone about odors or any other emissions from its plant; and the violation herein was minimal in nature and that, therefore, there is no rational basis in the record for the fine, citing *Bresler Ice Cream Co. v. Pollution Control Board* (1974), 21 Ill. App. 3d 560, 315 N.E.2d 619.

Section 2(b) of the Act states that the purpose of the Act is "* * * to establish a unified, state-wide program * * * to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." (Ill. Rev. Stat. 1971, ch. 111½, par. 1002(b).) In *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 313 N.E.2d 161, the Supreme Court held that the principal reason for authorizing the imposition of civil penalties under the Act was to provide a method to aid in the enforcement of the Act and that punitive considerations were secondary. In *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406, the Supreme Court noted that the Act does not confer authority upon the Board to impose a penalty in every case of a violation of the Act or regulations. The principal question thus presented is whether the imposition of the penalty upon ACA was a proper exercise of the discretion vested in the Board which may aid in the enforcement of the stated purposes of the Act. We find that the Board did not abuse its discretion in imposing a fine in the instant case, and that the fine imposed was not excessive.

We find the arguments advanced by ACA in support of its position on this issue unpersuasive. ACA's argument that it should have been allowed an opportunity to comply with the Board's finding that it had violated the Act before a penalty was assessed is not well taken in light of the Supreme Court opinion in *Mystik Tape*. There, the Supreme Court reversed that part of the appellate court opinion which stated that sections 9(a), 3(b) and 3(d) of the Act do not set forth sufficient standards to permit a finding of a violation of the Act without the Board first announcing additional standards and allowing a reasonable time to comply therewith. Also, the fact that no evidence was produced that ACA had received any

complaints about odors from its plant is of no consequence in resolving this issue since there is no requirement under the Act that such evidence be produced in order to find a violation or impose a fine. At most, evidence that a respondent had not received any complaints regarding emissions from its plant might be a mitigating factor for the Board to consider in making its order, as a factor bearing on the good faith attempt of the respondent to comply with the Act. While it is true that no evidence was produced indicating that ACA had received any complaints regarding odors from its plant prior to the filing of the original complaint on November 15, 1971, it is also true that no evidence was produced indicating that ACA had taken any steps to reduce or eliminate emissions from its plant from that time until December 1972 when it shut down the offending operation. *Bresler Ice Cream Co.*, cited by ACA, is distinguishable from this case in that there the court found the violations *de minimis* and Bresler had demonstrated its good faith by voluntarily abating all violations prior to the filing of the complaint therein.

We agree with the argument advanced by the EPA that the imposition of the penalty herein will serve to aid in the enforcement of the Act by working to secure voluntary compliance with the Act in other cases, especially by ACA at its new facility. Since the instant record does not demonstrate that ACA exercised a good faith attempt to comply with the provisions of the Act, and since the penalty imposed was neither arbitrary nor excessive, the order of the Board is affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.