SECURITY SAVINGS AND LOAN ASSOCIATION OF HILLSBORO, ILLINOIS, Plaintiff-Appellee, *v.* TIMOTHY E. GRIFFIN, Comm'r of Savings and Loan Associations of the State of Illinois, *et al.*, Defendants-Appellants.

Fourth District   No. 14273

Opinion filed February 7, 1978.

William J. Scott, Attorney General, of Chicago (Gregory G. Lawton, Assistant Attorney General, of counsel), for appellant Timothy E. Griffin.

Presney, Casper & Feurer, of Springfield (Paul E. Presney and James D. Kelly, of counsel), for appellants Hillsboro Savings & Loan Association and American Savings and Loan Association of Springfield.

Otto Funk, of Hillsboro, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This is an appeal from a decision of the circuit court of Sangamon County, sitting in administrative review, which reversed a decision of Timothy E. Griffin, Commissioner of Savings and Loan Associations of Illinois. In broad outline, the Commissioner's decision permitted Hillsboro Savings and Loan to relocate its office in Springfield and to maintain a facility at Hillsboro.

Hillsboro Savings and Loan (Hillsboro) had been in business in Hillsboro, Montgomery County, Illinois, for about 90 years. In 1975, the Illinois General Assembly passed legislation requiring all savings and loan associations to obtain insurance on their withdrawable capital accounts. Many smaller savings and loans, including Hillsboro, were unable to afford such insurance and were left with two alternatives—merge with a larger institution capable of meeting the criteria for obtaining insurance of accounts, or liquidate. Evidence in the record indicates that Hillsboro had assets of about $305,000 and a net worth between $60,000 and $65,000.

Hillsboro sought the merger route and entered into a bulk sales agreement (not involved in this appeal) with American Savings and Loan Association of Springfield. Apparently there had been some discussion about relocating in Rock Island, Illinois, because on September 8, 1975, Hillsboro addressed a letter to the Commissioner of Savings and Loan Associations of Illinois (Commissioner) in which it stated that the bulk sales agreement had been made and Hillsboro sought leave of the Commissioner to relocate its office in Rock Island and maintain a facility in Hillsboro. On September 10, 1975, a further letter was hand delivered from Hillsboro to the Commissioner; that letter modified the letter of September 8 by stating that the proposed relocation was to Springfield instead of Rock Island. On September 11, 1975, a certified copy of a bylaw amendment adopted by the Board of Directors of Hillsboro on September 9, 1975, was hand-delivered to the Commissioner. The amendment stated that the principal office was to be in Springfield and a facility in Hillsboro. These dates and the form of the letters will become significant in the following portions of this opinion.

American Savings and Loan Association of Springfield filed letters with the Commissioner confirming the bulk sale and concurring in the relocation and facility requests. Security Savings and Loan Association of Hillsboro (Security) and Montgomery County National Bank of Hillsboro filed objections. These objections were limited to the facility aspect of the matter; the objectors did not contest the relocation.

The Commissioner appointed two hearing officers and extensive evidence was taken before them. They filed a report with the Commissioner, which, in substance, made favorable recommendations on both the relocation and the facility application. The Commissioner adopted the report and on March 5, 1976, issued his approval of change of location and maintenance of a facility at the existing location of Hillsboro. Administrative review followed in the circuit court as above described. The court's order reverses only that portion of the Commissioner's approval dealing with the maintenance of a facility. It does not mention the relocation. This appeal followed.

The core of the trial court's decision is contained in the following quotation taken from its written opinion:

> "The letters filed herein are not applications within the meaning of the rules. The by-law in question was not filed simultaneously with the application; therefore, the Commissioner has not followed his own rules in this case.
>
> Under this decision, it is not necessary to consider the other points on appeal."

The rules referred to by the trial court are the Rules of Practice and

Procedure Before the Illinois Savings and Loan Commissioner, and, in pertinent part, read:

## "ARTICLE XI
## PROCEDURE ON APPLICATIONS BEFORE THE COMMISSIONER

Section 1. Application Filings.) Any association desiring to relocate its business office pursuant to Section 3—4(h) of the Act, or to maintain a facility pursuant to Section 1—9 of the Act and Article X of the Rules and Regulations * * * shall:

(a) File in triplicate on a form or forms prescribed by the Commissioner its verified application at the Springfield Office of the Commissioner.

## ARTICLE X
## RELOCATIONS AND FACILITIES

Section 1. Authorization.) Subject to the law of the State of Illinois and this Article X, an association may maintain facilities:

* * *

(b) At the existing location of an association's business office, and the authorized facility offices of the association, incident to a change in the location of the association's business office; * * *

* * *

Section 2. Approval by the Commissioner.)

* * *

(b) An application for approval of the maintenance of a facility shall be filed with the Commissioner simultaneous with the filing of: * * * (2) the application for approval by the Commissioner of a by-law amendment providing for a change in the location of an association's business office, in the case of a facility authorized by Section 1(b) of this Article X, * * *."

At the outset it may be noted that the copies of these rules contained in the record bear the notation "10-31-75" indicating to us that these particular rules were not in existence at the time the application was made. This belief is further reinforced by a statement in the brief of the Attorney General, representing the Commissioner, that no form was in existence at the time of the application. Hillsboro would be hard put to apply on a nonexistent document. We also note from the record that the objections of Security and Montgomery County Bank are not on forms prescribed by the Commissioner, as required by another section of article XI which reads:

"Section 3. Objections.) Any association or person wishing to object to any application filed pursuant to Section 1 hereof and

within the time requirements set forth in the applicant's authorized published notice shall:

(a) File in triplicate on form or forms prescribed by the Commissioner its verified objections at the Springfield Office of the Commissioner."

We find ourselves somewhat skeptical of Security's objections to the form of Hillsboro's application when Security itself pursued the same course. Security has further created for itself a logical dilemma when it objects only to the facility and not to the relocation. Both applications were cast in the same form; in fact, in the same document. The precise reason why the relocation application is good and the facility application is bad under the circumstances escapes us.

But assuming for the purposes of discussion that somehow the application can be bifurcated and the facility application considered in isolation, we believe the matter can be resolved by the application of section 12(2) of the Administrative Review Act which provides:

"Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him." Ill. Rev. Stat. 1975, ch. 110, par. 275(2).

■■ By the plain words of the statute, whether an error be technical or not is not to be defined in terms of prejudice. The duty on the court is first to determine the nature of the error, technical or nontechnical, and if technical, then next determine whether any prejudice resulted.

We must then consider whether the failure to use the proper form is, in fact, a technical error. Only a few cases exist which concern themselves with errors of this sort. The bulk of the cases dealing with the subject are concerned with violations of rules of evidence. Examples of cases dealing with errors in proceedings, as distinguished from evidentiary errors, are *Forberg v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 410, 352 N.E.2d 338, *Schwartz v. Civil Service Com.* (1954), 1 Ill. App. 2d 522, 117 N.E.2d 874, and *Aluminum Coil Anodizing Corp. v. Pollution Control Board* (1976), 40 Ill. App. 3d 785, 351 N.E.2d 612.

In *Forberg*, notification of the Board's decision a few days prior to the release of its official decision was found to be technical error. In *Schwartz*, the misstatement of a date was held technical. In *Aluminum*, the failure to cite the record for a particular finding was held technical. We believe that the case at bar fits well into the mold of these prior authorities.

The complaint is over "form," literally and figuratively. All of the necessary information was contained in the letters, and the extensive

objections, originally filed and later supplemented, demonstrate that Security and Montgomery knew exactly what was being litigated. Just what else might have appeared on the yet-to-be-devised Commissioner's form is a matter of speculation. While we are aware that forms are the lifeblood of bureaucracy, we are unconvinced that the failure to use one in this case amounted to a betrayal of trust.

■■ We find that the error was technical and that no prejudice resulted.

■■ Security argues further that the application was not verified and suggests that verification is jurisdictional. We point out again that Security fell into the same lapse in its objections which are not verified under the rules. The record further indicates that in December 1975, before the hearing in January 1976, Hillsboro's application was verified by a late-filed supplemental instrument. Any error in this regard we believe is technical and no prejudice resulted.

■■ We do not believe the verification is jurisdictional. The supreme court has rejected any limited concept of jurisdiction. Jurisdiction is conferred on the Commissioner by the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 701 *et seq.*), not by any particular type of pleading.

The next matter to be considered is the filing of the bylaw as required by the rule. The trial court held that it was filed either one or three days following the application, depending on which of the two letters is to be deemed the application. This ruling was apparently based on a literal interpretation of the word "simultaneous." The court quoted from Webster's New Collegiate Dictionary and held that the word means taking place or operating at the same time. We do not quarrel with this definition in the abstract but the key words are "at the same time." Courts have not arrived at any firm conclusion as to the meaning of this word. Many Federal courts have had occasion to interpret it in cases involving patent filings; some of them have held it to mean precisely at the same instant, others have taken a more flexible view.

Security cites *Berwyn Savings & Loan Association v. Illinois Savings & Loan Board* (1975), 29 Ill. App. 3d 965, 331 N.E.2d 254. In *Berwyn*, under essentially the same rules, a facility was authorized by the Board but reversed by the circuit court which was affirmed by the appellate court. However, the filing of the bylaw in *Berwyn* occurred some 18 months after the change in location while the rule plainly provided for a facility "incident to a change in location." *Berwyn* makes clear that facility and change of location are cut from the same bolt of legal cloth and this is what gives significance to the "simultaneous" aspect. Three things must constitute the pleadings in such an administrative proceeding: (1) an application for change in location, (2) an application for maintenance of a

facility at the existing location, and (3) the bylaw change authorizing the matter. All these must reasonably coincide in time. An association cannot change location and then, as an afterthought, establish a facility. The bylaw is necessary to bind the board of directors, and hence the corporation itself, to the move in order to forfend sham proceedings.

"Simultaneous" is an exceedingly peremptory word, but it is probably necessary to avoid the situation presented in *Berwyn* which is not present in the case at bar. To impart absolutism to the word is to exalt form over substance, and like the other matters complained of in the instant case, the issue never arose until after an adverse ruling to Security by the Commissioner.

■■ We hold that the filing of the bylaw, even though one to three days after the applications, met the spirit and intent of the rules. *Berwyn* did not and is inapposite.

All of these issues, the form, the verification, the simultaneous filing, are best answered in the recent case of *Wells v. Health & Hospitals Governing Com.* (1977), 52 Ill. App. 3d 183, 191, 367 N.E.2d 258, 263-64, where the court said:

> "Even if the plaintiff had properly preserved the question of the adequacy of the Commission's compliance with its procedural requirements for review, the courts have held that where an agency fails to comply with its own procedural rules but operates within the limitations set forth by the legislature, and the complainant suffers no great prejudice by such noncompliance, then the agency does not lose its jurisdiction. [Citations.]"

We concur with *Wells* and find all these errors technical and without prejudice.

We are faced with a problem of great delicacy in the fact that certain matters were alleged and argued in the trial court and in this court but upon which the trial court made no finding or judgment. These are: (1) the failure of the Commissioner to make certain findings, (2) the unconstitutionality of a portion of the Savings and Loan Act under which the Commissioner acted, and (3) the manifest weight of the evidence.

As previously indicated, the trial court rested its decision on two points only—the insufficiency of the application of Hillsboro, and the failure to file a bylaw simultaneously. The trial court apparently felt that since in its opinion, these were sufficient grounds for reversal of the Commissioner, no need existed to pass on other matters.

The supreme court has sanctioned a decisional process in a reviewing court of matters not decided in a trial court under limited circumstances. In *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 224 N.E.2d 236, *cert. denied*, 389 U.S. 848, 19 L. Ed. 2d 117, 88 S. Ct. 75, a

similar situation existed as in the case at bar. In disposing of the question, the court said:

> "We believe, however, that no useful purpose would be served here by remanding the cause for a consideration of the remaining issues. There are no disputed factual issues involved. * * * In short, the questions involved are as to legal effect and sufficiency, and these questions were presented to the trial court. While not ruled on by it, they were argued there by the defendants and briefed and argued by both parties here. Since defendants were unhampered by rulings limiting the scope of their presentations, we have the benefit of their research and suggestions in the trial court and here, and there would appear to be no denial of due process or prejudice to any defendant under these circumstances by our consideration of the contentions presented but not ruled on by the trial judge. It is established judicial policy to avoid intervention in investigative agency proceedings, except as due process requirements may necessitate. This policy would seem to require as a corollary the expeditious disposition of litigation involving such agency proceedings so that the functioning of the agency will not be unduly delayed. We accordingly deem it expedient to determine these unresolved issues now. See Ill. Rev. Stat. 1965, chap. 110, par. 92(1)(e)." 36 Ill. 2d 556, 563-64, 224 N.E.2d 236, 241.

■■ We believe that the same situation obtains here. There are no factual issues to be resolved; indeed, no additional evidence is ever presented to a trial court sitting in administrative review. Its judgment is based on the record made in the agency and presented to it. The issues presented here are purely legal in nature and their resolution will make an expeditious disposition of this litigation which is already over 2½ years old. Rule 366(a)(5), 58 Ill. 2d R. 366(a)(5).

The issue regarding the Commissioner's findings calls into relationship a statute and a rule. Under section 3—4(h) of the Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 744(h)), in the case of a relocation, the Commissioner is required to make six specific findings as detailed therein. In case of the maintenance of a facility, the Commissioner's Rule (article X, section 3(b)), three specific findings are required as detailed therein.

In his report, the hearing officer made the nine specific findings required by the statute and the rule. In the formal document issued by the Commissioner granting his approval of the relocation and the facility he stated: "(I) do hereby adopt the Report of the Hearing Officer, a copy of which is attached hereto and incorporated herein by this reference

* * *." He then makes the six specific findings required for a relocation but omits the three required for a facility.

■■ We are not persuaded that this is an oversight nor a deliberate violation. Rather, the Commissioner has drawn a distinction, reasonably so, between the statute and the rule. By specifically adopting the hearing officer's report, he complied with the rule as to findings on facility and then made the six findings mandated by statute. It is elementary that rules have the force of law, but are not law *per se*, as in the case of a statute which has *force majeure*. The Commissioner appears to us to be acting out of an abundance of caution, not in derogation of his rules. No error occurred.

■■ Turning next to the constitutional questions raised by Security, we have some reservation as to whether they were sufficiently raised and in an adequately specific manner that we may pass on them. (*People v. Palkes* (1972), 52 Ill. 2d 472, 288 N.E.2d 469.) Notwithstanding, we elect to do so in order to terminate this litigation.

■■ The statute in question is section 1—9(b) of the Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 709(b)), which reads:

> "No association may establish branches or offices at which savings or investments are regularly received or loans approved, unless and to the geographical extent branch powers and offices are granted to state banks under the 'Illinois Banking Act', as amended, or as it may be amended or supplemented, except the Commissioner may adopt regulations which provide for the establishment of facilities, as defined by the Commissioner, in the cases of mergers, consolidations or bulk sales; or facilities in the case of relocations."

Security claims that this statute is in violation of article XIII, section 8, of the 1970 Illinois Constitution which provides:

> "Branch banking shall be authorized only by law approved by three-fifths of the members voting on the question or a majority of the members elected, whichever is greater, in each house of the General Assembly."

Security argues that the statute (Ill. Rev. Stat. 1975, ch. 32, par. 709(b)) must be an amendment to the Banking Act in order to comply with the constitutional provision, although it admits that the statute passed both houses of the legislature by the required majorities. The argument is specious. The statute draws a sharp distinction between a branch and a facility, just as does the Banking Act. (Compare Ill. Rev. Stat. 1975, ch. 16½, pars. 106 and 105(15).) Branches are forbidden to both banks and savings and loan associations; facilities are permitted to each. The statutory scheme is parallel and clear. Security's interpretation would nullify the last clause in the statute giving the Commissioner power to

establish regulations for facilities. The case at bar deals with a facility, not a branch.

Security makes the further argument that even admitting *arguendo* that the statute was validly passed, it amounts to an unconstitutional delegation of power to the Commissioner. Such a contention was answered in *Sangamon County Fair & Agricultural Association v. Stanard* (1956), 9 Ill. 2d 267, 274, 137 N.E.2d 487, 492, wherein the supreme court said concerning a purported violation of the constitution by a statute:

> "It is not possible for the General Assembly to deal with the details of each particular case which may arise in the administration of an act, and since the requirements of a statute can be stated only in general terms, a reasonable discretion must necessarily be reposed in administrative officials charged with its enforcement. [Citations.] If the words used in a statute, taken in connection with their context, are commonly understood, their use does not render the statute invalid. [Citation.]"

We hold that the delegation of authority is reasonable and constitutional. This is particularly true since the next section of the same statute contains guidelines for the Commissioner. It reads:

> "No business shall be done at a facility except receiving deposits, cashing and issuing checks, drafts and money orders, changing money, processing mortgages and receiving payments on existing indebtedness." (Ill. Rev. Stat. 1975, ch. 32, par. 709(c).)

This statute is remarkably parallel to section 5(15) of the Banking Act referred to above.

■■ Yet, Security argues, the Commissioner's regulations are illegal. We fail to comprehend the argument. The regulations (article X, section 1(d)) are cast in the exact language of the statute. The Commissioner has quite properly defined a facility in terms of its function and not in terms of its physical description. Form nearly always follows function, but the converse is rarely true.

The constitutional arguments of Security are without merit.

The last contention raised by Security and not passed on at the trial level is that the Commissioner's decision is against the manifest weight of the evidence. "The rule is that the courts will not interfere with the exercise of the legislatively created powers of an administrative agency absent a showing that the agency's actions were palpably arbitrary, unreasonable, or capricious." *Skokie Federal Savings & Loan Association v. Savings & Loan Board* (1967), 88 Ill. App. 2d 373, 379, 232 N.E.2d 167, 171.

Since, as indicated above, the relocation is not under attack, we need concern ourselves only with the three findings required for a facility. These are: (1) that a need exists in the community of the existing office

and that the proposed facility will satisfy that need, (2) that the facility can be conducted without undue injury to existing associations, and (3) that the purposes of the Act will be furthered by maintenance of the facility. The Commissioner found affirmatively on all three.

We do not intend to review the evidence in detail here. We have examined the record and do not find the Commissioner in error. The principal testimony was given by Richard McKinley, an expert analyst who prepared a study of the Hillsboro market area which was received into evidence. McKinley was not connected with any of the parties to the proceeding, although at one time there was an indication that Hillsboro sought either merger or bulk sales with the institution for which McKinley prepared the study. He testified as to unmet need in the Hillsboro market area. He also believed that a greater retention of local savings would contribute to greater economic prosperity in the area and that a residue of assets available for investment in the community (local construction) would be built up that would otherwise flow to the Springfield or St. Louis areas.

Other testimony was given by Bruce White, who had been employed by Hillsboro for 30 years, and by Harold Sitton, secretary of Security, and by Harold Whitten of Montgomery County National Bank. Both of the latter testified that their institutions would not suffer zero or negative savings growth if Hillsboro maintained a facility; they intended to remain competitive, and had no real fear of harm.

■■ In our opinion the required findings of need and no undue injury were supported by the manifest weight of the evidence. The last required finding is likewise supported by the manifest weight of the evidence, namely, that the purpose of the Act will be furthered. The purpose is fully set forth in section 1—2 of the same statute. (Ill. Rev. Stat. 1975, ch. 32, par. 702.) Summarized, it provides that the number and minimum size of the institutions should be controlled, that their business should be promoted and their financial stability assured. The evidence showed that Hillsboro would become more financially stable with the backing of an institution able to obtain insurance on its deposits, that there would be no change in the number of institutions since Hillsboro had existed in the community since 1887, and that mortgages would become available under terms not theretofore offered in the area.

The whole issue is best summed up in *Skokie Federal Savings & Loan Association v. Becker* (1962), 26 Ill. 2d 76, 82, 185 N.E.2d 861, 864-65, where the supreme court said:

> "It should be noted that the findings required by the statute and made by the Director are not simple findings of readily ascertainable facts, but represent the application of expert administrative judgment to the evidentiary facts. Such terms as

'need,' 'public convenience and advantage,' 'reasonable probability of success,' and 'undue injury' are not facts that are susceptible to precise proof or measurement by any satisfactory judicial yardstick. They involve matters of judgment and policy. Under such circumstances, a court may not substitute its judgment for that of the administrative agency and should not reverse the order of the administrative agency unless the judgment of the agency is without substantial support in the record."

The judgment of the circuit court of Sangamon County, reversing the certification of approval of the Commissioner in part, is reversed.

Reversed.

GREEN, P. J., and REARDON, J., concur.