HYO K. CHA, Petitioner-Appellant, v. THE CITY OF CHICAGO *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—88—1147

Opinion filed January 29, 1990.

Law Offices of Joseph V. Roddy, of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The mayor's License Commission of the City of Chicago (the Commission) suspended the hotel/motel license of the licensee, Hyo K. Cha (petitioner), for the premises located at 5440 North Sheridan Road in Chicago, Illinois, known as the Lakeside Motel (Lakeside). The 15-day suspension order as to transient guests was based upon the Commission's finding that petitioner knowingly permitted Lakeside to be used for purposes of prostitution, violative of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1983, ch. 38, par. 11—17(a)).

Petitioner subsequently filed a petition for writ of *certiorari* in the circuit court of Cook County, alleging that the Commission's final order was against the manifest weight of the evidence. The circuit court affirmed the Commission's finding, and thereafter petitioner filed the instant appeal. We affirm.

The following testimony was adduced at the Commission's hearing, despite petitioner's numerous hearsay objections throughout the proceedings: Chicago police officer Arthur Smith testified that he was approached by Rachelle Plummer to engage in a sexual act with her for $35. Smith agreed to the $35 fee, and Plummer suggested they pro-

ceed to Lakeside, where she had an "arrangement."

Smith testified that upon their arrival at the motel, he observed petitioner in the office and informed petitioner that he was carrying a large sum of money and that he was "paying a prostitute $35." He asked petitioner "if this whore was safe to be with." Petitioner responded that she was okay, and that he had never had any trouble with her before. Petitioner also told him that he would have to come up with an additional $31.50 for the next day's rent for Plummer. After Smith tendered petitioner $31.50, Plummer objected, stating, "That's not our deal. Our deal is that I pay you after I turn a trick like I always have."

Smith further testified that once he and Plummer entered the motel room, Plummer telephoned the front desk, at which time she told Smith that she was calling an individual for some "smoke." Upon reaching petitioner, she gave petitioner the telephone number to dial because the only means by which a motel guest at Lakeside could obtain an outside telephone line was through the motel's switchboard. Approximately five minutes later, the telephone rang, and Plummer answered it and turned to Smith and stated, "[I]t's him at the front desk. He's saying there is a policeman in front and we cannot leave the room." After hanging up the telephone and five minutes later, Plummer telephoned the front desk and inquired into whether the delivery of marijuana had arrived. She then asked that petitioner dial the drug dealer's telephone number again. Smith was able to hear the conversation because Plummer, who was standing three feet away from him, turned the receiver towards Smith, but he did not recognize the voice on the other end of the telephone. The voice on the other end of the telephone asked Plummer, "[D]id you make sure that no one was following you?" to which Plummer replied that "I did exactly as you told me." The voice also asked her whether "the policemen [could] have followed [her]." She informed Smith that "it's just [petitioner] *** being worried that the police are going to get the both of us."

The telephone rang again, and Plummer told Smith that "it's the gentleman from the front office." Petitioner instructed her not to leave the room because the police officer was parked directly in front of the motel. Smith suggested to Plummer that, since the marijuana had not yet arrived, perhaps he and Plummer should go directly to the drug dealer. As Smith and Plummer exited the motel room, petitioner was motioning to Plummer to go back into the room. Smith then identified himself as a police officer and arrested Plummer and petitioner.

Plummer testified that she is a prostitute and has an "arrangement" with petitioner which permits her and some 20 other prostitutes

to work at Lakeside. If a prostitute does not have money to pay for a motel room, petitioner gives her a room at the motel. When the prostitutes bring their "dates" to the motel, the date must pay the petitioner the motel room rental fee. Plummer never personally gave petitioner money for a room because he charges the "guys" the rental fee up front before he rents them a room. This business relationship with petitioner began in January 1987, and since that time Plummer has brought 25 or 30 dates to the motel.

Plummer testified to the events that occurred in the motel room on April 16, 1987, consistent with Smith's testimony set forth above. On cross-examination, she testified that she approached Smith at Winona Avenue, approximately three blocks from Lakeside, and offered to have sex with him for $35, and Smith gave her $100. Smith did not arrest her at that time. She identified and acknowledged her signature on a registration "sign-in" card for Lakeside, which states "I HEREBY CERTIFY THAT I HAVE NOT RENTED THIS ROOM FOR ANY ILLEGAL PURPOSE: GAMBLING, PROSTITUTION OR SOLICITATION OF OTHERS."

Petitioner testified that he was unaware that Plummer was a prostitute when he rented her the motel room. He further testified that he rented the room to Plummer for the period from April 13, 1987, to April 16, 1987, but later testified that Plummer had remained in her room for three weeks and that he thought she was very sick.

Petitioner testified as follows to the April 16, 1987, events: Plummer arrived on April 16, 1987, with Smith and attempted to proceed to her motel room without paying. Smith paid for the motel room, and Plummer and Smith left together. He did not observe them proceed to the room, but he telephoned Plummer's motel room and informed her that since the registration card was solely in her name, two people could not occupy the motel room. He telephoned Plummer twice more to notify her of this policy prior to her arrest.

■■ In considering petitioner's contentions on appeal, we are mindful of the well-established principles of administrative review that the agency's findings and conclusions are *prima facie* true and correct (Ill. Rev. Stat. 1987, ch. 110, par. 3—110; see also *Russell v. License Appeal Comm'n* (1971), 133 Ill. App. 2d 594, 598, 273 N.E.2d 650, 653) and that a reviewing court is limited to ascertaining whether the findings and decisions of the agency are against the manifest weight of the evidence (*Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745; *Kessell v. Illinois Liquor Comm'n* (1978), 56 Ill. App. 3d 485, 371 N.E.2d 1210; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814 (and cases cited therein); see also *Dot-*

*son v. Bowling* (1981), 102 Ill. App. 3d 340, 430 N.E.2d 44; *Giampa v. Illinois Civil Service Comm'n* (1980), 89 Ill. App. 3d 606, 411 N.E.2d 1110). A finding is against the manifest weight of the evidence if an opposite conclusion is clearly evident (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351; *Meyers v. Illinois Department of Public Aid* (1983), 114 Ill. App. 3d 288, 448 N.E.2d 1176; *Spiros Lounge, Inc. v. Illinois Liquor Control Comm'n* (1981), 98 Ill. App. 3d 280, 423 N.E.2d 1366), and, if the issue is merely one of conflicting testimony and credibility of witnesses, the agency's determination should be sustained. *Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 391 N.E.2d 190; *Schoenbeck v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 366, 387 N.E.2d 738.

■ Initially, petitioner asserts that the Commission's finding of suspension failed to set forth a specific basis for suspending his license. A review of the record leads us to the conclusion that a sufficient basis was given for suspending petitioner's license.

The Commission clearly set forth section 11—17(a) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 11—17(a)) as a basis for suspending petitioner's license in its "Order of Suspension." The order states the following, in pertinent part:

"1. That on April 16, 1987, the Licensee, Hyo Kil Cha, who was exercising control over the licensed premises, knowingly permitted the licensed premises to be used for purposes of prostitution, contrary to Chap. 38, §11—17(a), I.R.S. (1983)."

We believe that petitioner's assertion is not well-grounded in fact, as the record dictates to the contrary.

Petitioner also argues that the record is devoid of any evidence supporting the charge that he knowingly arranged or offered to arrange a meeting of persons for purposes of prostitution, violative of section 11—15(a)(2) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 11—15(a)(2)). No mention is made of section 11—15(a)(2) in the "Order of Suspension." Hence, we need not address this argument, as section 11—15(a)(2) was not the basis for the suspension here.

Petitioner next contends that the Commission's finding cannot stand because it was based upon inadmissible hearsay testimony. He argues that the Commission improperly admitted portions of Officer Smith's testimony, wherein Smith testified to conversations he had with Plummer, which was the only evidence supportive of the Commission's decision to suspend petitioner's license.

■■ While we acknowledge that hearsay testimony is inadmissible in an administrative hearing (*Russell v. License Appeal Comm'n* (1971), 133 Ill. App. 2d 594, 598, 273 N.E.2d 650, 653), this does not

prevent a finding to be based upon other sufficient competent evidence (*La Grange State Bank No. 1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 481, 398 N.E.2d 992, 998; *Schwartz v. Civil Service Comm'n* (1954), 1 Ill. App. 2d 522, 527, 117 N.E.2d 874, 876). We find it unnecessary to address whether the testimony referred to by petitioner was improperly admitted here because the record demonstrates that even without this testimony, sufficient competent evidence was presented to support the Commission's finding that petitioner knowingly permitted the licensed premises to be utilized for purposes of prostitution. The unchallenged evidence indicated that Plummer was a prostitute and offered to have sex with Smith for $35. She had a business "arrangement" with petitioner, which entitled her and other prostitutes to "work out of [petitioner's] motel." Smith informed petitioner that he was paying Plummer $35 to have sex with him. He tendered $31.50 to petitioner for the motel room, and petitioner accepted the money.

■ Petitioner, however, argues that the registration "sign-in" card demonstrates Plummer's intent not to use the motel premises for acts of prostitution because it shows that petitioner did not knowingly permit Lakeside to be utilized for purposes of prostitution. In light of the above evidence, we find this piece of evidence unpersuasive. Plummer's signature was a mere formality to her obtaining the motel room and presumably petitioner's maintenance of proper business records. Plummer's and petitioner's real intent is more properly extracted from the testimony given at the hearing. Moreover, it is wholly within the Commission's authority to assess the credibility of the witnesses, weigh the evidence, and to reconcile conflicting evidence (*Kessell*, 56 Ill. App. 3d at 491, 371 N.E.2d at 1214; see also *Nechi v. Daley* (1963), 40 Ill. App. 2d 326, 188 N.E.2d 243), and we will not substitute our judgment for that of the Commission (see *Stringer v. Rowe* (1980), 91 Ill. App. 3d 134, 414 N.E.2d 466; *Canady v. Northern Illinois Gas Co.* (1963), 43 Ill. App. 2d 112, 193 N.E.2d 48).

Accordingly, we find that the circuit court of Cook County correctly determined that the finding of the Commission to suspend petitioner's license for a 150-day period as to transient guests was not against the manifest weight of the evidence, as an opposite conclusion is not plainly evident.

Affirmed.

O'CONNOR and MANNING, JJ., concur.