Richard J. Daley, Mayor and Local Liquor Control Commissioner of the City of Chicago, Plaintiff-Appellant, v. Francisco Perez, Licensee, License Appeal Commission of the City of Chicago, A. L. Cronin, Chairman, Defendants-Appellees.

Gen. No. 50,973.

First District, First Division.

April 10, 1967.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, and Richard J. Hoerger, Special Assistant Corporation Counsel, of counsel), for appellant.

John R. Hieber, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

In this action the plaintiff, Mayor of the City of Chicago, as ex officio Local Liquor Control Commissioner, held a hearing under the Liquor Control Act (Ill Rev Stats 1965, c 43, § 149) and later revoked the retail liquor license issued to the defendant, Francisco Perez. Upon appeal the License Appeal Commission reversed the revoking order and the Mayor filed a statutory action under the Administrative Review Act (Ill Rev Stats 1965, c 43, §§ 153, 154a) to review the order of the License Appeal Commission. The trial court affirmed the order of the License Appeal Commission and plaintiff appeals from this judgment.

The plaintiff contends that a liquor license is a purely personal privilege which may be revoked, in the public interest, by the Mayor in his reasonable discretion for any of the reasons specified in section 5, Article VII of the Liquor Control Act; that there is substantial evidence to support the revocation of the liquor license and that the trial court erred in affirming the order of the License Appeal Commission.

The defendant's theory is that the Mayor's revoking order is not supported by substantial evidence and was an abuse of discretion, arbitrary and without good cause, and that the License Appeal Commission and the trial court, after a review of the entire record, correctly found that the Mayor's order was against the manifest weight of the evidence.

The evidence presented at the hearing before the Deputy Liquor Control Commissioner indicated that police officers, Edward Millar and Edward Seng, arrived at Perez's tavern at 12:10 a. m. on September 12, 1964. Officer Seng testified he saw Carlos Meza on the sidewalk in front of the tavern bleeding from a puncture wound through the thigh muscle of his right leg which

was later treated at a hospital. He also saw Rafael Meza outside the tavern and he had bruises and lacerations on his face and was bleeding from the mouth. The defendant told him there was a fight outside the tavern and that he did not know what had happened. Seng said he searched the premises and found a revolver in a drawer behind the bar and he thought Perez told him it was his. On cross-examination he testified that when Officer Millar asked Perez whether he had a gun Perez showed him where it was.

Carlos Meza testified that he arrived at the tavern about 6:30 p. m. with Rafael Meza, his brother, who is presently in Mexico. He said he had been going to that tavern for eight months and knew Perez. When they were leaving at about 12:00 a. m., and Rafael was about five feet from the door, Perez started an argument with his brother calling him a "Mexican nigger" and cursing him. He said when his brother pulled up his pants leg and told Perez, "I am not a Negro, I show You.", Perez punched him in the mouth. He testified that when they went outside fighting he followed them and tried to separate them. He said Perez went back into the tavern and then six or seven men armed with knives came out and attacked his brother. He said he was five feet from the door with his back turned when he heard a shot and turned around and saw Perez in the doorway with a gun in his hand, who then shot him in the right leg. On cross-examination he testified that he and his brother had been drinking for six hours, but denied that Perez told them to get out, denied that he started a fight outside because he wanted to get back inside and denied that Perez was also shot.

Francisco Perez was called as a Commission witness and testified that the Meza brothers were in his tavern, but denied he hit Rafael or shot Carlos. He said he never had any trouble in the tavern and denied that he

had a fight on September 2, 1963, or that he was warned by the Mayor's office for a sale to a minor on January 24, 1964. When questioned by his attorney he testified that the Meza brothers were fighting with each other outside his tavern. He said when he opened the door and told them to break it up, he heard a shot and saw his leg was bleeding. He testified further that he did not shoot Carlos and did not have a gun in his hand. On reexamination he admitted that he did not tell the police officers he had been shot.

On April 15, 1965, the License Appeal Commission reviewed the transcript of evidence, heard oral arguments of counsel, and found that the Mayor's revocation order was not supported by substantial evidence in the light of the entire record and ordered the license reinstated. The trial judge affirmed the License Appeal Commission giving no reason other than "having reviewed the record and heard argument of counsel."

■ Under the Liquor Control Act the License Appeal Commission cannot receive or consider new evidence and is limited to a review of the record of the Mayor and a determination of three questions, namely, "(a) whether the local liquor control commissioner has proceeded in the manner provided by law; (b) whether the order is supported by the finding; [and] (c) whether the findings are supported by substantial evidence in the light of the whole record." Ill Rev Stats 1965, c 43, § 153. On review, the trial court is similarly limited by the Administrative Review Act which also provides that the finding and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. Ill Rev Stats 1965, c 110 § 274.

In Parker v. Department of Registration, 5 Ill2d 288, 125 NE2d 494, the court considered the scope of judicial review under the Administrative Review Act and construed it to mean that the courts are not authorized to

reweigh the evidence or to make an independent determination of the facts, but are limited to a consideration of the record to determine if the findings of the commissioner, who alone saw and heard the witnesses, is against the manifest weight of the evidence.

The defendant argues that the License Appeal Commission and the trial court correctly found the Mayor's order to be against the manifest weight of the evidence because the testimony of Carlos Meza is entirely improbable for two reasons:

> (a) That there was apparently no conversation between Perez and the plaintiffs during these five and one half hours they were in the tavern and that for no explainable reason Perez is alleged to have started an argument with Rafael Meza.

> (b) It is highly improbable that a man standing with his back to an alleged assailant could be shot in the right leg, the bullet passing through the thigh muscle on an angle of 45° from the upper thigh to a point above the kneecap.

The uncontradicted evidence shows that the Meza brothers had been drinking liquor for several hours in Perez's tavern while he was present and that an argument and a fight took place which resulted in Carlos Meza being shot. The only witnesses who testified to the latter occurrence were Carlos Meza and Francisco Perez. The direct testimony of Meza shows that the fight and argument started in the tavern and continued outside and that Perez shot him. Perez testified that he saw a fight between the Meza brothers outside the tavern and that he heard a shot and his leg began to bleed. He did not report the wound to the police nor go to a hospital.

The Deputy Commissioner, having seen and heard the witnesses, was in the best position to evaluate wheth-

er the testimony of Carlos Meza was probable or believable, and it is obvious that he chose to believe Carlos Meza. It is our judgment that his order was not contrary to the manifest weight of the evidence and that he did not act arbitrarily or abuse his discretion in revoking Perez's liquor license. Therefore the judgment of the Circuit Court is reversed and the cause remanded with directions to reinstate the revocation order.

Judgment reversed and cause remanded with directions.

MURPHY, P. J. and ADESKO, J., concur.