LARRY HAGGERTY, Plaintiff-Appellant, *v.* LICENSE APPEAL COMMISSION, CITY OF CHICAGO, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 77-1168

Opinion filed April 26, 1979.

Norman P. Wexler, of Wexler, Wexler and Heller, Ltd., of Chicago (Harold Wexler, of Wexler & Wexler, of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Steven G. Revethis, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The petitioner in this case had his tavern license revoked by the Local Liquor Control Commissioner after he was found guilty of certain charges. He has appealed, contending that the findings of the Commissioner are not supported by the evidence. We disagree and affirm.

On March 15, 1976, the petitioner, Larry Haggerty, was charged with having, through his agent, Tommie Haggerty, bartender/manager, on December 13, 1975, possessed two unlicensed firearms on the premises of his tavern, the Ghetto Lounge.

In June 1976, during the course of the hearing, the complaint was amended and several other charges were added. After the hearing was finally completed the Local Liquor Control Commissioner, on September 23, 1976, found that the licensee:

1. on December 13, 1975, knowingly possessed, by and through his agent, Tommie Haggerty, bartender/manager, two unregistered firearms on the licensed premises;

2. was not the sole beneficial owner of the business but held the liquor license as a subterfuge for Tommie Haggerty;

3. employed Tommie Haggerty as manager and failed to file a manager's statement with the city of Chicago, as required by law;

4. employed Tommie Haggerty as manager, although the latter was ineligible to hold a license himself since he had been convicted of gambling;

5. knowingly loaned or gave away his retail liquor license to Tommie Haggerty;

6. illegally received money other than commissions from Topps Vending Co., a coin-operated amusement device firm that has coin-operated machines installed on the licensed premises.

The petitioner unsuccessfully appealed to the circuit court contending (1) that the Commissioner's findings 2 through 6, both inclusive, are unsupported by the evidence and that his first finding is unsupported by any evidence since there was no evidence that Tommie Haggerty was an employee or acting within the scope of his employment at the time of the arrest and (2) that the Commissioner erred in refusing to permit the introduction of certain evidence because Larry Haggerty, who is practically illiterate, was unable to identify the documents. After the trial court rejected these contentions, the petitioner has brought them to us on appeal.

In reviewing the petitioner's contentions that the Commissioner's findings are unsupported by the evidence we must keep in mind what we stated in *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 470-71, 371 N.E.2d 1116, 1122-23:

"The appellee, in contending that the Bistro could evict Britt because he was intoxicated and had threatened the various employees, and that Britt assaulted Hough rather than vice versa' and that only reasonable force was used in evicting Britt, is simply contending that the commissioner should have believed its witnesses and should not have believed Britt. To put it another way, the appellee is unhappy with the manner in which the issue of credibility was resolved. But it is for the local commissioner and not for the court to assess the credibility of the witnesses. (*Sarytchoff v. License Appeal Com.* (1973), 11 Ill. App. 3d 735, 297 N.E.2d 646; *Jackson v. Illinois Liquor Control Com.* (1973), 10 Ill. App. 3d 496, 295 N.E.2d 536; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814; *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499; *Daley v. Richardson* (1968), 103 Ill. App. 2d 383, 243 N.E.2d 685; *Daley v. Perez* (1967), 81 Ill. App. 2d 478, 226 N.E.2d 676.) As this court stated in *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 277-78, 254 N.E.2d 814, 820:

'In cases of this kind, we, and the Circuit Court, and the License Appeal Commission are all required to accept the judgment of the Local Commissioner as to the credibility of the witnesses. It is only he as the trier of the facts who is authorized to assess credibility weigh the evidence, reconcile conflicting evidence, if possible, and, if not possible, determine which witnesses are worthy of belief. Crepps v. Industrial Commission, 402 Ill. 606, 615, 616, 85 NE2d 5; Parker v. Department of Registration and Education, 5 Ill2d 288, 293, 294, 125 NE2d 494; Adamek v. Civil Service Commission of Chicago, 17 Ill App2d 11, 20, 149 NE2d 466; Daley v. Rifkin, 84 Ill App2d 467, 470, 228 NE2d 224; Ill Rev Stats 1967, c 43, §153 and c 110, §274. Neither the Circuit Court nor this court should disturb the Commissioner's decision so long as it is supported by substantial evidence, and is neither arbitrary nor contrary to the manifest weight of the evidence. Daley v. Kilbourn Club, Inc., 64 Ill App2d 235, 211 NE2d 778; Daley v. Johnson, 89 Ill App2d 100, 233 NE2d 95. * * *

* * *

In our opinion, the testimony of the police officer was

adequate to establish violation of the soliciting statute and, therefore, adequate also to support the license revocation. We are unable to find in this record anything other than possible disbelief of this evidence (which, as we have pointed out, is not available to us) to justify the Circuit Court's determination that it amounted to entrapment or was otherwise insufficient.'

Likewise as was stated in *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 403, 241 N.E.2d 499, 503:

'In sum, in the light of the whole record, we believe the testimony of the police officers presented sufficient substantial evidence to support the findings of the local commissioner. As plaintiff's employees denied the testimony of the police officers, it reduced the issue to one of credibility of the witnesses. The credibility of the witnesses here was a question for the local commissioner, who saw and heard them testify. It was the province of the commissioner to weigh the probabilities, judge the credibility of the witnesses, and determine whose testimony was more worthy of belief. There must be something more than the mere existence of conflicting testimony to warrant the conclusion that a finding of fact is erroneous. The decision of the commissioner cannot be said to be against the manifest weight of the evidence merely because the commissioner chose to believe the testimony of the police officers and not that of plaintiff's employees. (Crepps v. Industrial Commission, 402 Ill 606, 615, 85 NE2d 5 (1949).) In order for the decision of an administrative agency to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident.' "

The Commissioner's second, third, fourth and fifth findings basically concern one issue: whether Larry Haggerty obtained a license as a subterfuge for his brother Tommie, or at the least whether Tommie acted as the manager of the lounge. Tommie concededly had been convicted of gambling. If the business, in fact though not in name, was his, or if he was the manager or agent of the licensee, the Commissioner properly found Larry to be in violation of statute and properly revoked his license. Ill. Rev. Stat. 1975, ch. 43, par. 120(11), (15), (16).

■ There was testimony from John J. Fitzgerald, the officer of South Central Bank and Trust Company, that Tommie Haggerty, posing as Larry Haggerty, on November 18, 1975, opened a bank account for the Ghetto Lounge at that bank. Only Tommie's photograph appears on the bank

card. While the card is signed, "Larry Haggerty," the signature in fact was Tommie's. According to Fitzgerald, at no time did Tommie tell him he was opening an account for Larry. (While Tommie claimed he did tell Fitzgerald he was opening the account for Larry, the examiner was not required to believe this claim especially since admittedly Tommie, not Larry, signed Larry's name—an act obviously contrary to good banking practice.) Both Larry and Tommie testified that Tommie actually opened the account, Larry claiming at one point that it was a joint account, at another time denying that it was. Tommie signed most of the checks for the business, using Larry's name although Larry signed a few. Both claimed this was done because Larry is, for practical purposes, illiterate. Tommie was even signing the checks in November of 1975, although Larry testified that at that time Tommie was not an employee. Furthermore, Larry stated to the police in a statement given to them on February 25, 1976, that he paid Tommie for his services in cash. However, as the appellant himself says in his brief, Tommie was never listed in business records as an employee nor were these payments deducted as business expenses on the income tax return. This, the Commissioner could have concluded, was evidence Tommie shared in the profits of the business despite Tommie's denial that he did. The Commissioner was entitled to conclude from Fitzgerald's testimony that Tommie Haggerty was the real operator and beneficial owner of the business, merely using his brother's name since he could not obtain a license in his own name.

Furthermore, the evidence is overwhelming that in 1976 Tommie Haggerty acted as the manager or agent of the licensee in conducting the business in violation of article VI, section 2(11) of the Liquor Control Act. (Ill. Rev. Stat. 1975, ch. 43, par. 120(11).) In the statement given to the police on February 25, 1976, which statement was received into evidence, Larry admitted that Tommie was employed by him and that he worked as his (Larry's) agent. Larry further told the police that he was only at the Ghetto Lounge once or twice a week and when he was not there, Tommie was in control. At the hearing Larry, while admitting that he had signed the statement, denied that the police had asked him who was in control of the Ghetto Lounge when he was not there, and said that he had not known what he was signing. However, he admitted that his attorney had been present and that he had consulted with him before signing the statement. Furthermore, at the hearing, Larry testified that Tommie took care of the business when he was not there. As already noted, Tommie signed most of the checks of the business. One of the men who delivered beer to the lounge testified that Tommie received 80 percent of the deliveries. Generally it was Tommie who paid for the deliveries. Tommie denied that he worked at the lounge (although Larry in the police statement said

he was an employee) but admitted that he helped out at the lounge nearly every day. He testified that Larry was at his other business during the day and at the lounge every night.

■ In light of Larry's statements, both to the police and at trial, the examiner's conclusion that Tommie was a manager conducting the business was one which could reasonably have been reached.

■ Turning now to the first charge, we agree with the petitioner that the city made no attempt to show that Tommie Haggerty was an employee of Larry Haggerty or the Ghetto Lounge as early as December 1975 or to prove that at the time he was arrested for the unlawful possession of an unregistered gun Tommie was acting within the scope of his employment. The owner is not responsible for conduct over which he has no control. (*Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116; *Middleton v. License Appeal Com.* (1974), 20 Ill. App. 3d 534, 314 N.E.2d 596.) However, as we have already ruled, the evidence was sufficient to show that Tommie was in fact the beneficial owner of the lounge. Accordingly, he was in effect acting as the agent of the owner at all times and his possession of the guns was a violation of the liquor laws even if he was only in the lounge at that time to buy a drink.

■ The petitioner has also complained of the Commissioner's refusal to allow the admission of certain documents into evidence because Larry failed to identify them. Larry did not identify them because he could not read. We agree with the city that even if the refusal to admit the documents into evidence was error, it did not materially affect the petitioner's rights. (Ill. Rev. Stat. 1975, ch. 110, par. 275(2).) These documents consisted of the licensee's dramshop insurance policy, the loan agreement, and various bills and statements of the public utilities for service to the licensee. They were all in Larry's, not Tommie's, name. The mere fact that a person pretends to be an owner and informs others that he is and is billed for its debts does not prove that there was no subterfuge and that someone else is not the real owner. Furthermore, it is clear from other evidence which was admitted, including checks signed in Larry's name, that the purchases and contracts were at least ostensibly made by Larry. Accordingly, the proffered evidence, even if it could be considered relevant, was at best merely cumulative and its refusal did not materially affect the petitioner's rights.

Since we have held that the evidence as to Tommie's relationship to the lounge was sufficient to sustain the Commissioner's revocation of the liquor license, it is not necessary for us to consider the finding that the lounge received unlawful monies from Topps Vending Company.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P. J., and LINN, J., concur.