SPIROS LOUNGE, INC., Plaintiff-Appellee, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 80-1913

Opinion filed July 14, 1981.—Rehearing denied August 11, 1981.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg, Assistant State's Attorney, of counsel), for appellants.

Steven C. Huston, Michael A. Moses, and Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, Ltd., all of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

On November 11, 1979, the Lake County Liquor Control Commission (hereinafter County Commission) revoked the retail liquor license of Spiros Lounge, Inc. (hereinafter Spiros) after finding that on October 13, 1979, the licensee, through its agent, served alcoholic liquor to a person under 19 years of age, in violation of article VI, section 12 of the Illinois Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 131), and section 11, paragraph 1 of the Lake County Liquor Control Ordinance. The County Commission found further that a breach of the peace occurred in the licensee's establishment on that occasion. The County Commission also found that on May 11, 1979, Spiros' license had been suspended for 30 days for selling alcoholic liquor to a minor and operating a disorderly house.

Spiros appealed the revocation to the Illinois Liquor Control Commission (hereinafter State Commission). On February 4, 1981, following a hearing *de novo*, the State Commission entered an order of revocation, finding that Spiros, through its agent, delivered two mixed alcoholic drinks to a person who was 18 years of age, and that no adequate written evidence of age was produced before delivery of the drinks. It was further found that the County Commission had entered a 30-day suspension order against Spiros on May 11, 1979, for selling liquor to a minor.

Acting on a complaint for administrative review, the circuit court of Cook County reversed the order of the State Commission. Defendants, the State Commission, the County Liquor Control Commissioner and the County Commission, appeal.

The issues presented on appeal are: (1) whether the trial court erred in determining that the findings of the State Commission were contrary to the manifest weight of the evidence; and (2) whether the trial court erred in finding that the State Commission considered irrelevant or prejudicial testimony in reaching its decision.

For the reasons hereinafter set forth, we reverse.

On the evening of October 13, 1979, Debra Stimes and a companion, Terry Moore, entered Spiros Lounge, located at 3480 Sheridan Road, Zion, Illinois. At the hearing before the State Commission, the bartender, Johnny M. Livingston, testified that Stimes was seated at the bar, while Moore remained standing. Moore ordered a drink for himself and one for Stimes. Livingston stated that he had asked Debra Stimes for an "I-D" card prior to serving her, and that she took a card out of her purse and handed it to him. He could not recall what type of identification it was. After determining that the girl was over 21 years of age, Livingston served her a "screwdriver," a mixed alcoholic drink. On cross-examination Livingston stated that Terry Moore was not present when the drink was served to Stimes, and he could not remember if Moore had been present when Stimes was asked to show her identification card.

Livingston recounted that an argument began between Moore and another customer of the tavern (later described as a man of Mexican descent). Livingston tried to break up the argument. When he believed that the argument was ended, he returned to his bartending duties. The next thing of which he was aware was that Debra Stimes had been shot. Livingston stated that neither he nor Spiros Vlahos, the tavern's owner, nor any other employee of the tavern was involved in the altercation or the shooting.

Terry Moore testified that after entering the tavern, Debra Stimes was seated on the only stool available next to the bar. Moore went to look for another stool and upon returning ordered two drinks for Stimes and himself. Livingston served the drinks, and both Moore and Stimes drank from their glasses. Joe Kent, a patron at the tavern, ordered a round of drinks for everyone in the tavern, and Moore and Stimes were then served a second drink. Moore stated that at no time prior to drinking her first drink was Debra Stimes asked to produce identification.

Moore testified that after the second drink was served to them, he went into the washroom.[1] When he returned, he found that a man, whom he described as a "Mexican," was "bothering" Stimes. Moore argued with the man, and a fight began. Moore heard shots and looked back to find

---

[1] On cross-examination Moore admitted that it was possible that the bartender could have asked Stimes for identification while Moore was in the washroom. In reviewing the record the trial court emphasizes this possibility. The trial court overlooks Moore's statement, however, that Stimes was not carded before she began her *first* drink.

Debra Stimes on the floor, dead. Moore stated that he saw Joe Kent holding a gun.

Two police officers who investigated the shooting, Ralph Connard and Donald O'Meara, Jr., testified that they searched Debra Stimes' purse for evidence of identification. Among other personal papers and items in the purse, four pieces of identification were discovered in the wallet. The purse, which accompanied the body to the hospital, was later turned over to the Deputy Coroner. Ultimately Stimes' purse was returned to her parents.

Over Spiros' objection, three pieces of identification were entered into evidence: (1) a white plastic card identifying a "Christina Gates" as a patient at the Mile Square Health Center; (2) a Social Security card for Christina Gates; and (3) Debra Stimes' Illinois driver's license reflecting her birthdate as November 13, 1960.[2]

Over further objection, evidence was introduced regarding a prior suspension of Spiros' liquor license on May 11, 1979. The Commissioner allowed this evidence to be entered for the suggested purpose of assessing the severity of the penalty that could be imposed.

Three witnesses testified for Spiros. The first two, James Lane and Donald Kepcham, acquaintances of Spiros Vlahos and customers of the tavern, stated that they saw the bartender ask Debra Stimes for an identification card, and that she handed him a plastic-coated card before she was served. Both testified that Stimes returned the card to her purse. On cross-examination the witnesses admitted that the tavern had been crowded and noisy that evening, and that Stimes was sitting several persons away from them. The testimony of the third witness, Irvin Klecka, who was not present at the State Commission hearing, was stipulated and read from the transcript of the local hearing. This witness, who had occasionally bartended for the tavern and who was a customer that evening, stated only that he saw Stimes hand something to the bartender before she was given a drink.

The appellants, in seeking a reversal of the order of the Circuit Court, contend that the findings of the State Commission are not contrary to the manifest weight of the evidence; that irrelevant or prejudicial testimony was not considered by the State Commission in reaching its findings; and that the penalty of revocation was not an abuse of discretion.

I

■■ In an administrative review proceeding the trial court and the appellate court are limited to a consideration of the record to determine (1) whether the findings and orders of the commissioner are against the

---

[2] The fourth piece of identification (purportedly another Social Security card) was not admitted into evidence.

manifest weight of the evidence, and (2) whether the commissioner acted arbitrarily and without cause or in clear abuse of his discretion. (*Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 78; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814; *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499.) The findings and conclusions of the agency on questions of fact are accepted as prima facie true and correct (Ill. Rev. Stat. 1977, ch. 110, par. 274), and courts have generally held that it is not the function of either the trial court or the appellate court to reweigh the evidence or assess the credibility of the witnesses. In order to find that an agency's findings are contrary to the manifest weight of the evidence, the reviewing court must determine that an opposite conclusion was clearly evident from the record. *Giampa v. Illinois Civil Service Com.* (1980), 89 Ill. App. 3d 606, 411 N.E.2d 1110; *Okino v. Department of Corrections* (1980), 84 Ill. App. 3d 1084, 405 N.E.2d 1369; *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 405 N.E.2d 1082.

■■ In view of the conflicting testimony in the instant case, the State Commissioner's determination was presumptively based on his assessment of witness credibility. The State Commissioner saw and heard the witnesses testify, and his finding that no adequate written evidence of age was presented to Spiros' bartender prior to serving Debra Stimes cannot be said to be contrary to the manifest weight of the evidence simply because he may have chosen to believe the testimony of one witness over another. Only the Commissioner as the trier of fact is authorized to assess credibility, weigh and reconcile conflicting evidence and make a determination as to which witnesses are worthy of belief. *Haggerty v. License Appeal Com.* (1979), 71 Ill. App. 3d 767, 390 N.E.2d 89; *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116; *Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499.

The record reflects that Terry Moore was present when Debra Stimes was served, and Moore testified that at no time before Stimes began to drink did the bartender ask her for identification. The bartender contended in direct conflict with Moore's testimony that he asked for and received a card from Stimes prior to serving her, but he could not recall what type of identification card it was. Other witnesses, patrons of the tavern, testified that a card was passed from Stimes to the bartender prior to delivery of a drink. These witnesses admitted that they were all friends or acquaintances of the tavern owner and that on the evening in question Spiros was very crowded and noisy.

The State Commissioner found that the licensee, through its agent, delivered two mixed alcoholic drinks to Debra Stimes, who was 18 years of age at the time, and that no adequate written evidence of age was produced by Stimes prior to her being served. Based on the totality of the

record these findings are not, in our opinion, against the manifest weight of the evidence.

Even if the State Commissioner had found that Debra Stimes had produced a false identification card, Spiros' contention, that proof of reliance on false identification is a statutory defense to the violation of serving liquor to a minor, could not stand. The pertinent portion of the Illinois Liquor Control Act provides as follows:

> "Adequate written evidence of age and identity of the person is a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a motor vehicle operator's license, a registration certificate issued under the Federal Selective Service Act, or an identification card issued to a member of the Armed Forces. *Proof that the defendant-licensee, or his employee or agent, demanded, was shown and reasonably relied upon such written evidence* in any transaction, forbidden by this Section is competent evidence and *may be considered in any * * * proceedings for the suspension or revocation of a license based thereon.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 43, par. 131.

■■ The statute clearly provides that proof of reliance on adequate written identification is only a factor that "may be considered"; it does not establish that reliance on false identification is an absolute defense to an action against a licensee for violation of the Act. *B & W Liquors, Inc. v. Illinois Liquor Control Com.* (1981), 96 Ill. App. 3d 413, 421 N.E.2d 396.

■■ Spiros also contends that there were other identifying documents in Stimes' purse which were not produced at the State hearing, and he argues that it was improper for the police not to have preserved the entire contents of the purse. In support of this argument Spiros cites the testimony of the investigating police officers who recalled that they removed several identification cards from the purse but left other documents and personal items in the purse. Based on this testimony Spiros asks the court to infer that the other documents may have contained evidence of the girl's age upon which the bartender could have relied. The police officers, however, testified that they did not believe that any of the other documents contained evidence of identification. It is completely speculative, therefore, as to whether there were other documents containing evidence of Debra Stimes' age. Spiros did not make a demand for discovery of the purse, and this court cannot now be asked to draw a negative inference from the State's failure to introduce the other contents of the purse. See *Southwest Federal Savings & Loan Association v. Cosmopolitan National Bank* (1959), 23 Ill. App. 2d 174, 182, 161 N.E.2d 697.

## II

The State and County Commissions' second contention is that the trial court erred in finding that the State Commission considered irrelevant or prejudicial testimony in reaching its decision.

The record reflects that Spiros appeared before the State Commission on two charges: (1) the sale of liquor to a minor and (2) a breach of the peace. The State Commission, however, made a finding only as to the charge of the sale of liquor to a minor. No finding was made on the breach of the peace charge. The Commission also found that on May 11, 1979, the tavern's license had been suspended for the sale of liquor to a minor.

■■ Spiros argues that it was improper for the State Commissioner to have considered the earlier suspension. It has been held, however, that "[m]isconduct of a licensee, for which disciplinary action has previously been administered, may be considered in a subsequent proceeding * * * in conjunction with new evidence of misconduct." *Childers v. Liquor Control Commission* (1966), 67 Ill. App. 2d 107, 114, 213 N.E.2d 595.

Spiros also contends that the State Commission improperly considered testimony concerning the death of Debra Stimes. A licensee cannot be charged with conduct over which he has no control (*Childers*, at 113), and it appears from the record that neither the licensee nor any of its agents was involved in the occurrence of Debra Stimes' death. Spiros argues that the "severity of the revocation order in a cause involving a purported sale of liquor to a minor * * * demands the conclusion that the Commission was influenced by the events surrounding the death of Debbie Stimes * * *."

Thus, Spiros, in effect, raises two issues: (1) whether the State Commission was prejudicially influenced by the testimony regarding Debra Stimes' death, and (2) if not, whether it was an abuse of discretion for the Commission to revoke Spiros' license based solely on the sale of liquor to a minor.

In the instant case the evidence of Debra Stimes' death was admitted by the State Commission as relating to the breach of peace charge. There was, however, no finding by the Commission on such charge. In an analogous case a police officer, charged with (1) being intoxicated while in uniform and (2) conduct unbecoming an officer, was ordered by the Civil Service Commission to be discharged from the police department, based only on a finding that the officer was intoxicated while in uniform. On administrative review the trial court found that the Commission's decision was not supported by the manifest weight of the evidence and reversed the decision. On appeal by the Civil Service Commission, the police officer maintained that the Commission had improperly admitted

prejudicial testimony relating to the charge of conduct unbecoming an officer. The appellate court held that the admission of such testimony had not prejudiced the officer since he had not been found guilty of the charge of conduct unbecoming an officer. The appellate court reversed the trial court's decision and upheld the discharge of the officer. *Schwartz v. Civil Service Com.* (1954), 1 Ill. App. 2d 522, 527, 117 N.E.2d 874.

In the case at bar Spiros was found guilty only of serving liquor to a minor. There is no evidence to indicate that the State Commissioner's finding was prejudicially affected by the testimony concerning the death of Debra Stimes.

■■ The remaining issue is whether it was an abuse of discretion for the Commissioner to revoke Spiros' liquor license based solely on the finding that the licensee served liquor to a minor. The Liquor Control Act empowers both the local liquor commissioner and the State Commissioner to revoke a retail liquor license. Article IV, section 3 of the Liquor Control Act (Ill. Rev. Stat. 1977, ch. 43, par. 112) authorizes the local liquor commissioner to "revoke for cause all local licenses issued to persons for premises within his jurisdiction." While the Liquor Control Act does not define the terms "for cause," it is established that the commissioner is vested with broad discretionary power to be exercised reasonably. (*Miller v. Daley* (1973), 14 Ill. App. 3d 394, 302 N.E.2d 347; *Collins v. Daley* (1970), 131 Ill. App. 2d 108, 266 N.E.2d 453.) Under section 5 of article VII of the Act (Ill. Rev. Stat. 1977, ch. 43, par. 149), a violation of any statute, ordinance or regulation upon licensed premises generally constitutes cause for revocation. It has been held, however, that the application of this section is limited to ordinances or regulations that are fairly related to liquor control. *Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 78; *Nappi v. License Appeal Com.* (1977), 50 Ill. App. 3d 329, 365 N.E.2d 612; *Weinstein v. Daley* (1967), 85 Ill. App. 2d 470, 229 N.E.2d 357.

Article III, section 12, authorizes the State Commissioner to revoke a retail liquor license. Such a revocation may be based on a determination that the licensee has violated any provision of the Liquor Control Act or any rule or regulation issued pursuant thereto. Ill. Rev. Stat. 1977, ch. 43, par. 108.

■■ On May 11, 1979, the local liquor commissioner suspended Spiros' liquor license for 30 days, after finding that the licensee had violated the statutory prohibition against serving liquor to a minor. This was the most severe penalty which could be imposed short of revocation (Ill. Rev. Stat. 1977, ch. 43, par. 112). The State Commissioner found that on October 13, 1979, just five months later, Spiros was guilty of a similar violation. From our review of the record we conclude that the findings of the State Liquor

288

Control Commission were not contrary to the manifest weight of the evidence and that the order of revocation was not as abuse of discretion. Accordingly, the order of the circuit court of Cook County is reversed.

Reversed.

STAMOS and DOWNING, JJ., concur.