WILDE-HAMMAR, INC., Appellant, v. CHARLES P. CONNOR *et al.*, Appellees.

Third District   No. 3—90—0573

Opinion filed July 19, 1991.—Rehearing denied August 27, 1991.

McKeown, Fitzgerald, Zollner, Buck, Hutchison & Ruttle, of Joliet (Richard T. Buck and Scott M. Belt, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Liquor Control Commission.

City Legal Department, of Joliet (Thomas A. Thanas and Linda A. Haviland, of counsel), for other appellees.

JUSTICE SLATER delivered the opinion of the court:

Plaintiff Wilde-Hammar, Inc., a Delaware corporation, operates a business known as the Wilde-Hammar Lounge (the lounge) in Joliet, Illinois. Barry Kraker, president and principal stockholder of Wilde-Hammar, Inc., was charged with committing aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8)) and criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—15(a)(1)) in connection with an incident involving a patron of the lounge, Lori Bazzarone. The liquor commissioner of the City of Joliet subsequently revoked plaintiff's liquor license for violating a local liquor control regulation which prohibits the licensee from violating or allowing a violation of any city ordinance, State statute, or Federal law upon the premises. The order revoking plaintiff's license was upheld by the Illinois Liquor Control Commission, which found that the commissioner's findings were supported by substantial evidence. A petition for rehearing was denied. Plaintiff filed a complaint for administrative review in the circuit court of Will County and the court affirmed the decision of the Liquor Control Commission. Plaintiff now appeals, contending: (1) that the liquor commissioner did not proceed in the manner provided by law; (2) that the findings of the commissioner are not supported by substantial evidence; and (3) that merely being arrested is an insufficient basis for finding a violation of State law. We affirm.

■ Before discussing the issues presented by plaintiff, we first address two motions which were ordered taken with the case. Defendants filed a motion to strike plaintiff's brief because it contains information which does not appear in the record. This information, which concerns the disposition of the criminal charges and a civil lawsuit brought against Barry Kraker, is the basis of a large part of one of plaintiff's arguments on appeal. Plaintiff has filed a motion to supplement the record with the additional information.

Section 3—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 3—110) provides that no new or additional evidence shall be heard by the court on review of an administrative decision. Plaintiff's motion to supplement the record is therefore denied. Defendants' motion to strike plaintiff's brief is also denied. We will, however, disregard any reference to, or arguments based upon, information not contained in the record.

Plaintiff first contends that it was improper for the liquor commissioner to revoke plaintiff's license when it was the deputy liquor commissioner who conducted the hearing and heard the evidence and testimony. Plaintiff argues that the deputy commissioner had the opportunity to assess the credibility of the witnesses and that therefore only he, and not the commissioner, could properly render a decision.

■ Section 4—2 of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1989, ch. 43, par. 111) authorizes the liquor commissioner to appoint others to assist him in the performance of his duties. It is well settled that "in the absence of statutory provisions to the contrary, it is not necessary that testimony in administrative proceedings be taken before the same officers who have the ultimate decision-making authority." (*Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 128, 357 N.E.2d 785, 791; see also *Starkey v. Civil Service Comm'n* (1983), 97 Ill. 2d 91, 454 N.E.2d 265; *Stojanoff v. Department of Registration & Education* (1980), 79 Ill. 2d 394, 403 N.E.2d 255; *Starnawski v. License Appeal Comm'n* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102.) Such a procedure is proper so long as the decision maker "considers the evidence contained in the report of proceedings before the hearing officer and bases [his] determinations thereon." (*Homefinders*, 65 Ill. 2d at 128, 357 N.E.2d at 791.) The order revoking plaintiff's license specifically states that the liquor commissioner "reviewed the evidence in the record and *** conferred with the hearing officer." We find no error.

Plaintiff next maintains that the findings and order of the liquor commissioner are not supported by substantial evidence in light of the whole record. The commissioner found that plaintiff violated section 4—35 of the Joliet Liquor Code, which prohibits the licensee from violating, or permitting or allowing a violation of, any city ordinance, State statute, or Federal law on the licensed premises. The bases of the violations were the commissioner's determinations that Barry Kraker: (1) "intentionally and knowingly without legal justification made physical contact of an insulting and provoking nature with Lori Bazzarone on July 16, 1989, at the Wilde-Hammar Lounge" in violation of section 12—4(b)(8) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8)); and (2) "intentionally and knowingly touched and fondled Lori Bazzarone's sex organs and breasts through her clothing for the purpose of his sexual gratification and arousal" in violation of section 12—15(a)(1) of the Criminal Code (Ill. Rev. Stat. 1989, ch. 38, par. 12—15(a)(1)).

The testimony presented at the five-day hearing indicated that Bazzarone went to the lounge with two friends at approximately 10

p.m. on July 15, 1989, after attending a festival in Plainfield, Illinois. Bazzarone had never been to the lounge and did not know Barry Kraker. According to Bazzarone and one of her friends, Cynthia Frieders, she drank one "Long Island iced tea," a drink containing four shots of liquor, and she had a few sips out of a second drink before going to the washroom sometime after midnight. According to other witnesses, Bazzarone had three "iced teas" and several additional shots of liquor and she appeared to be highly intoxicated. Bazzarone and Frieders entered the women's washroom and found that a man was in the stall. According to Bazzarone and Frieders, the man left within a few minutes; according to others, Bazzarone, Frieders, and the man remained in the washroom for 15 to 20 minutes and would not allow anyone to enter.

Bazzarone testified that after the man left, another girl, Giselle Batozech, entered the washroom and entered the stall ahead of Bazzarone and Frieders. As Batozech was leaving, a man whom Bazzarone later identified as Kraker entered the washroom. Frieders was "pushed out" of the small washroom when Kraker entered. Bazzarone testified that Kraker began touching Batozech's breasts and she told him "no, no, no, no" in a "laughing type of voice" and ran out of the bathroom. According to Bazaronne, Kraker then grabbed her (Bazzarone's) breasts, buttocks, and groin before she was able to leave the washroom. She stated that she was "hollering no" while this occurred. Frieders testified that as she reentered the washroom she heard Bazzarone say "no" and saw her bent over with her arms up and "she had gone under [Kraker's] arms." Frieders stated that Kraker's hands were "near [Bazzarone's] back or on her back."

Bazzarone testified on direct and cross-examination that Kraker was dressed in grey tuxedo trousers, a pleated white shirt, and a pink bow tie. Also, on rebuttal cross-examination she testified that he was wearing dark pants, a pleated shirt, and a pink bow tie. The record indicates that Kraker had been to a wedding that night, but he was not wearing a tuxedo, although members of the wedding party were at the lounge wearing tuxedos similar to the one described by Bazzarone. Kraker, however, was wearing a grey suit with a white shirt and salmon-colored tie, clothing which one witness described as the "same color as the wedding party wore."

Kraker testified that he and his wife went to the lounge after a wedding reception and he entered the women's washroom because he was told that there was a man inside. Kraker chased the man out of the washroom and saw Bazzarone, who was bent over near the sink and appeared drunk. He told her to leave and she "gave [him] some

lip." Kraker picked Bazzarone up by the shoulders and escorted her out of the restroom with his hands on her back. Kraker denied touching or grabbing Bazzarone's breasts, buttocks, or groin.

Bazzarone testified that, after she ran out of the washroom, she left the lounge and did not return except with a police officer to identify Kraker. Michael Dillon, a lounge customer and deputy sheriff, testified that Bazzaronne remained or came back in the lounge and said that she was "pissed" about being thrown out of the lounge. Kraker stated that he also overheard Bazzarone say she was "pissed." David Thayer, another lounge patron, testified that sometime around midnight he was outside the lounge talking to Kraker when Bazzarone came staggering out and said to Kraker: "You son-of-a-bitch, you can't throw me out of here." A Joliet police officer who was called to investigate the incident described Bazzarone as hysterical and frightened. The officer did not think that Bazzarone was intoxicated. Kraker was arrested and charged with aggravated battery and criminal sexual abuse.

■ The findings and conclusions of an administrative agency on questions of fact are considered to be *prima facie* true and correct (Ill. Rev. Stat. 1989, ch. 110, par. 3—110). Upon administrative review, both the trial and appellate courts are confined to determining: (1) whether the findings and orders of the administrative agency are against the manifest weight of the evidence; and (2) whether the agency acted arbitrarily and without cause or in clear abuse of its discretion. (*Easter Enterprises, Inc. v. Illinois Liquor Control Comm'n* (1983), 114 Ill. App. 3d 855, 449 N.E.2d 1013; *Spiros Lounge, Inc. v. Illinois Liquor Control Comm'n* (1981), 98 Ill. App. 3d 280, 423 N.E.2d 1366; *Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 75.) In order to find that the agency's findings are against the manifest weight of the evidence, it must be determined that an opposite conclusion is clearly evident from the record. *Blunier v. Board of Fire & Police Commissioners* (1989), 190 Ill. App. 3d 92, 545 N.E.2d 1363; *Spiros Lounge*, 98 Ill. App. 3d at 284, 423 N.E.2d at 1369.

■ As plaintiff notes in its brief, in this case "Bazzarone's credibility, truthfulness and memory are *** crucial" to a determination of the correctness of the liquor commission's conclusion that the commissioner's findings were supported by substantial evidence. It is not the function of this court, however, to reweigh the evidence or assess the credibility of the witnesses. (*Leong v. Village of Schaumburg* (1990), 194 Ill. App. 3d 60, 550 N.E.2d 1073; *Spiros Lounge*, 98 Ill. App. 3d at 284, 423 N.E.2d at 1369.) While the testimony of the witnesses was in conflict, the mere existence of conflicting testimony does not

warrant a conclusion that a finding of fact is erroneous. (*Legones v. License Appeal Comm'n* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499.) Although Bazzarone was obviously mistaken in testifying that Kraker was wearing a tuxedo, this was simply a factor to be weighed by the trier of fact. Such an error does not destroy her credibility, particularly where the clothing worn by Kraker was similar to that worn by members of the wedding party. We find that the testimony of Bazzarone, Frieders, and the Joliet police officer who responded to the incident provided substantial evidence which, if believed, supported the findings of the liquor commission and the local liquor commissioner.

■ Although presented as a single issue, plaintiff's final contention consists of two distinct arguments. First, plaintiff contends that the mere fact that Kraker was arrested and charged with violating State law is insufficient to support a finding that he actually committed a statutory violation. We agree, and if the revocation of plaintiff's license was based simply on the fact that Kraker was arrested, we would not hesitate to reverse. Plaintiff ignores the fact, however, that the liquor commissioner's decision was based on the testimony of numerous witnesses presented in the course of a five-day hearing. It was the evidence presented at the hearing, and not the mere fact of Kraker's arrest, which provided the bases for the revocation of plaintiff's license. Moreover, plaintiff's attempt to interject the results of the criminal proceedings against Kraker must fail as "the licensee's conviction of the crime to which his alleged misconduct related is neither necessary to sustain the order of revocation nor material." (*Weinstein v. Daley* (1967), 85 Ill. App. 2d 470, 476, 229 N.E.2d 357; see also *Legones v. License Appeal Comm'n* (1968), 100 Ill. App. 2d 394, 241 N.E.2d 499; *Nechi v. Daley* (1963), 40 Ill. App. 2d 326, 188 N.E.2d 243.) *Graves v. Illinois Liquor Control Comm'n* (1977), 55 Ill. App. 3d 888, 371 N.E.2d 368, cited by plaintiff, is inapposite. In *Graves* this court affirmed the circuit court's reversal of a license revocation because the charges against the plaintiff were not sufficiently clear and specific to allow the presentation of a defense. No similar issue is raised in this case and the charges here were sufficiently specific.

■ Finally, relying on *Nappi v. License Appeal Comm'n* (1977), 50 Ill. App. 3d 329, 365 N.E.2d 612, plaintiff maintains that the statutory violations committed by Kraker are insufficient to support the revocation of its license because the violations are not reasonably related to the control of liquor. In *Nappi*, one of plaintiff's barmaids shot her husband after he came to plaintiff's bar looking for her. Plaintiff's license was revoked on the basis that he, through his agent,

committed aggravated battery. The circuit court reversed, finding that the act of the barmaid was not chargeable to the plaintiff. The appellate court affirmed, noting that the husband was not a patron and that the shooting was a purely personal act which was not attributable to the licensee.

*Nappi* is clearly distinguishable from this case, which involves aggravated battery and criminal sexual abuse committed against a patron by the president and chief stockholder of the licensee. These acts are clearly attributable to the licensee. Furthermore, the liquor commissioner is vested with broad discretionary power to determine whether sufficient cause exists to revoke a license (*Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 75), and we find no abuse of that discretion. While the statutory violations here are not as directly related to the control of liquor as, for example, selling alcohol to minors, they are related to the safety and security of those who visit such establishments.

> "The operation of dramshops is fraught with danger, and the purpose of the Liquor Control Act is to protect the public against that danger by regulating the retail sale of liquor." *Nappi,* 50 Ill. App. 3d at 330, 365 N.E.2d at 614.

We believe that the maintenance of a reasonably safe environment is "fairly related to the control of liquor" (*Askew,* 62 Ill. App. 3d at 374, 379 N.E.2d at 77) and that, at a minimum, this includes refraining from the type of conduct at issue here. (*Cf. Daley v. Kilbourn Club, Inc.* (1965), 64 Ill. App. 2d 235, 211 N.E.2d 778 (discharge of firearm by bartender was sufficient cause for license revocation).) We hold, therefore, that violation of the statutes prohibiting aggravated battery and criminal sexual abuse provided sufficient bases for the revocation of plaintiff's license. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GORMAN and McCUSKEY, JJ., concur.